IN THE MATTER OF THE ELECTION OF DIRECTORS OF THE ARGUS PRINTING COMPANY.

1. **Corporation; Right of Pledgee to Vote Stock.**

The pledgee of stock in whose name it stands on the corporate records has a right to vote the stock at a meeting to elect directors.

2. **Same; Pledgor Can Compel Pledgee to Give Proxy.**

The pledgor has no right to vote such stock, but a court of equity will, in a proper case, compel the pledgee to give the pledgor a proxy.

**3. Same—Stockholder on Company's Books May be Director Though He Have Assigned His Stock.**

One not appearing to be a stockholder upon the corporate records is not eligible to the office of director, under the statute providing that only stockholders are eligible to that office; one who still so appears is eligible, and may vote notwithstanding he has assigned the stock.

**4. Same — Majority of Stock Must be Voted at Election of Directors.**

A vote of stockholders representing a majority of the subscribed capital stock is necessary to the choice of a director. There being no such vote, the election is declared illegal, and a new election ordered.

**5. Same — Stockholders' Meeting.**

A stockholder holding a majority of the subscribed capital stock having acquiesced in the organization of a stockholders' meeting, and having participated in the business of the meeting as so organized, among other things having nominated persons for the office of director, cannot afterwards withdraw from the meeting, and organize another meeting, at the same time and in the same place, and by voting at that meeting elect the persons voted for by him the directors of the corporation. It is his duty to remain in the meeting first organized and vote his stock there, and no one can prevent his voting his stock at that meeting, although his ballot may be rejected. Notwithstanding such rejection, had he voted his stock at the original meeting the persons voted for by him would have been elected directors, and under the statute declared by the court elected.

**6. Same; Same — Transfer of Stock Made to Render Transferee Eligible for Director.**

A transferee of stock upon the corporate records is qualified to vote the stock, and to become a director, although the transfer was made for the express and sole purpose of so qualifying him, provided that it was not made in furtherance of a fraudulent scheme.

(Opinion Filed February 25, 1891; Rehearing Denied March 18, 1891.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

*A. C. Davis, B. F. Spaulding* and *Benton & Amidon,* for Appellant; *Edwin O. Faulkner, S. G. Roberts* and *A. W. Edwards* for Respondents A. W. Edwards, H. C. Plumley and M. R. Flint.

CORLISS, C. J. On this appeal we are asked to review the judgment of the district court in summary proceedings instituted under § 2932 of the Compiled Laws to determine

the rights of certain persons to the offices of directors of the Argus Printing Company, a corporation. This statute provides that upon the application of any person or body corporate aggrieved by any election held by any corporate body, or any proceedings thereof, the district judge of the district in which the election is held must proceed forthwith summarily to hear the allegations and proofs of the parties, or otherwise inquire into the matters of complaint, and thereupon confirm the election, order a new one, or direct such other relief in the premises as accords with right and justice. This appeal must be decided as we determine which of two persons had the right to vote 546 shares of stock. The total amount of stock which had been issued at the time of the meeting to elect directors was 570 shares. At this meeting A. W. Edwards voted these 546 shares of stock for the following directors: A. W. Edwards, H. C. Plumley, M. R. Flint, Alexander Griggs, and William A. Stevens. At the same time and place one E. O. Faulkner voted these same shares for Alexander Griggs, W. A. Stevens, B. F. Spaulding, H. C. Plumley, and E. O. Faulkner as directors. In whom was the right to vote this stock? The stock at one time was the property of A. W. Edwards. For the purpose of securing a debt which he owed to J. J. Hill, this stock, with 10 other shares, was transferred upon the corporate books to E. O. Faulkner, confidential clerk of Mr. Hill. Certificates representing the total number of shares, 556, were issued directly to Mr. Faulkner, the same being signed by Mr. Edwards as president of the company, the old certificates held by Edwards being canceled. The stock, therefore stood on the books of the corporation in the name of E. O. Faulkner.

Where there has been no transfer of the stock on the books of the corporation a pledgee of such stock may not vote it. The beneficial ownership is still in the pledgor, and the records of the corporation still show him to be a stockholder. In none of the cases cited in which the right to vote was adjudged to be in the pledgor, instead of the pledgee, had there been a record of the transfer made. See McDaniels v. Manufacturing Co., 22 Vt. 274; in re Baker, 6 Wend. 509; ex parte Willcocks, 7 Cow. 410; Strong v. Smith, 15 Hun. 222. We have discovered an Oregon

case in which the stock stood upon the books in the name of the pledgee, but the court ruled that he could not vote it because he had no authority from the pledgor to make the transfer. This case we will refer to hereafter. In the case at bar the stock stood in the name of the representative of the pledgee upon the corporate records. Was he a *bona fide* stockholder within the meaning of our statute which restricts the right to vote stock to those who are *bona fide* holders thereof? § 2931, Comp. Laws. It may be stated in this connection that Edwards could not vote the stock, as the stock had not stood in his name on the books of the corporation for ten days prior to the election. Id. If, then, the representative of the pledgee could not vote the shares, no election of directors could be held, for no one else had a right to vote it, and without its being represented at the election no election of directors could be had, for the reason that these shares constituted more than half of the capital stock. At all elections or votes had for any purpose, there must be a majority of the subscribed capital stock represented, etc. Id. No person can be chosen director without a majority vote. § 2925, id. At the time the legislature em-employed the word "stockholders" in the section prescribing the qualification of a voter at corporate meetings, that word had acquired a definite and fixed meaning, so far as a pledgee of stock was concerned. It had been repeatedly adjudged that a pledgee of stock whose transfer was upon the corporate records was a "stockholder," within the meaning of the statute providing for the liability of stockholders for the debts of corporations. The general reasoning upon which these decisions were based was that the pledgee with a recorded transfer was a stockholder for the purpose of receiving dividends and voting at stockholders' meetings; and that he could not enjoy all of the benefits enjoyed by a stockholder without being subject to a stockholder's liability. Said the court in Bank v. Case, 99 U. S. 628: "It is thoroughly established that one to whom stock has been transferred in pledge, or as collateral security for money loaned, and who appears on the books of the corporation as the owner of the stock, is liable as a stockholder for the benefit of creditors. We so held in Pullman v. Upton, 96 U. S. 328, and

like decisions abound in the English courts, and in numerous American cases, to some of which we refer. Adderly v. Storm, 6 Hill, 624; Rosevelt v. Brown, 11 N. Y. 148; Bank v. Burnham, 11 Cush. 183; Magruder v. Colston, 44 Md. 349; Crease v. Babcock, 10 Metc. (Mass.) 535; Wheelock v. Kost, 77 Ill. 296; *in re* Bank, 18 N. Y. 199; Hale v. Walker, 31 Iowa, 344. For this several reasons are given. One is that he is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the stock, and his denial of ownership is inconsistent with the representation he has made; another is that by taking the legal title he has released the former owner; and a third is that, after having taken the apparent ownership. and thus become entitled to receive dividends, vote at elections, and enjoy all the privileges of ownership, it would be inequitable to allow him to refuse the responsibilities of a stockholder." In Pullman v. Upton, 96 U. S. 328, the court said: "So in Bank v. Burnham, 11 Cush. 183, it was decided that a transfer of stock on the books of the bank, intended merely to be held as collaterial security, makes the holder liable for the bank debts. It was said that the creditor was to be considered the absolute owner, and that his arrangement with his debtor cannot change the character of the ownership." In Magruder v. Colston, 44 Md. 349, where it was held that the pledgee whose transfer was recorded was liable as a stockholder, the court said: "Stockholders are those who appear on the books of the bank as owners of shares, and who are entitled to manage its affairs, and they can only throw off the liabilities incident to that relation by transferring the stock."

That the word "stockholder," as used by the legislature, was, in the absence of any qualification of its meaning, understood by the legislature to be sufficient to embrace a pledgee with a legal title to the stock because of a transfer on the books, is clear from the provisions of § 2933, Compiled Laws, expressly declaring that the holding of stock by a pledgee shall not render the holder a stockholder, within the meaning of that section, rendering stockholders liable for debts of the corporation. It is significant that in § 2931, prescribing the qualification of a voter, and declaring that he must be a *bona fide* stockholder, no

such limitation of the meaning of the word "stockholder" is to be found. There are numerous cases in which it is said that a pledgee is a stockholder, and entitled to vote when he appears to be a stockholder on the books of the corporation. In Franklin Bank v. Commercial Bank, 36 Ohio St. 350, plaintiff loaned to one Foote, the president of defendant, a sum of money, and received as security a pledge of the capital stock of defendant owned by such president. Defendant having refused to transfer the shares on its books, plaintiff sued for the conversion of the stock. The court held that he could not recover, on the principle that one corporation will not be allowed to own stock in another corporation in the absence of statutory authority. Said the court: "Were this not so, one corporation, by buying up the majority of the shares of the stock of another, could take the entire management of its business, however foreign such business might be to that which the corporation so purchasing such shares was created to carry on. * * * Nor would this result follow any the less certainly, if the shares of stock were received in pledge only to secure the payment of a debt, provided the shares were transferred on the books of the company to the name of the pledgee. A person in whose name the stock of the corporation stands on the books of the corporation is as to the corporation a stockholder, and has the right to vote upon the stock. * * * Hence if the plaintiff appeared upon the books of the defendant as the transferee or owner of the two hundred shares of stock represented by the certificate to Foote, it would have the right to vote upon the stock at all meetings of the stockholders of the defendant; and it would be only necessary for it to procure in pledge, as security for money loaned, a majority of the shares of the capital stock of the Commercial Bank, (defendant in the case,) in order to obtain full control of its affairs and take charge of its banking operations. * * * It therefore follows that the refusal of the defendant to permit the transfer upon its books to the plaintiff of the two hundred shares of its stock violated no right of the plaintiff, and consequently created no liability on the part of the defendant. Such refusal did not amount to a conversion of the stock. Its action in refusing to transfer was but the denial

of any right by the plaintiff to be placed in a position to inter-
fere and participate in the control and management of its in-
ternal affairs." In Poole v. Association, 30 Fed. Rep. 513,
Judge Brewer says: "The stock was assigned as collateral for
moneys advanced by B. D. Brown. It was duly transferred on
the books of the company, so that they unquestionably have all
the rights of stockholders." In State v. Ferris, 42 Conn. 560, a
bankrupt in whose name stock stood on the books of the com-
pany was adjudged entitled to the right to vote the stock after
the title to the stock had passed to the assignee in bankruptcy
under the provisions of the bankrupt act. The court observed:
"It has been repeatedly held by this court that the books and
records of a corporation determine who are its stockholders for
the time being, and who have the right to vote on the stock, al-
though the same may have been sold or pledged as collateral se-
curity. In such cases the party who appears to be the owner by
the books of the corporation has the right to be treated as a stock-
holder, and to vote whatever stock stands in his name." See,
also, People v. Robinson, 64 Cal. 373; 1 Pac. Rep. 156; State v.
Pettineli, 10 Nev. 141. Mr. Colebrooke, in his work on Collat-
eral Securities, says: " In the absence of restrictive statutes,
the pledgee of certificates of stock indorsed and transferred on
the books of the company has a right to vote at its meetings.
His name appearing as stockholder on the records, he becomes
for all purposes a stockholder. The right to vote is an incident
of the pledge, and according to the presumed intention of the
parties." § 283. In Vail v. Hamilton, 85 N. Y. 453, the
action was brought to set aside a mortgage on corporate prop-
erty, on the ground that it was void because two-thirds of the
stockholders had not assented to it. Certain of the stock stood
in the name of the pledgee on the books of the corporation.
The assent of such stock was essential to the validity of the
mortgage. The pledgee did not give such assent, and the court
adjudged the mortgage void on the ground, among others, that
the pledgee was, as to that particular stock, a stockholder, and
his assent was necessary because without it there was not the
assent of the requisite two-thirds. The court said: "It is true
that the shares were transferred to Conklin as collateral security,

but the certificate was absolute in its terms, and he was described therein as owner. He so appeared upon the proper books of the corporation. Under such a title, he had power to render the security available by sale to satisfy the debt on default of payment, and until the debt was satisfied he was the one interested in protecting the property represented by the shares from diversion by liens or preferences improperly created. The company had a right of redemption, and so had an equitable interest in the stock; but upon defendant's theory they could, without redemption, overreach the legal title by creating a mortgage which, when enforced, would extinguish it, and until that event deprives it of value. Conklin had a clear interest in that matter. Except as limited by statute, no stockholder by any title could have more or greater rights, or be subjected to other liabilities. He is relieved by statute from personal liability." This, as we have already seen, is the case in this state. "He would be otherwise bound for the debts of the corporation, for a creditor need in general look only for the legal title. For the same reason he had a right to vote; his character upon the books of the bank would be conclusive upon the inspectors; and whether §. 17 of the act of 1848, *supra*, could under any circumstances, be so construed as to deprive one with such a tittle from voting, it is not necessary to inquire, for the question does not arise; but it is clear that, except for the permission given in that section, even a pledgor could not vote. It has no application to an assent required to be given in writing to a specific act of the corporation, and which, without qualification, the statute requires to be given by a stockholder. Such we have no doubt was the character of Conklin as to the five hundred shares in question at the time of the execution of the mortgage. Including these shares as part of the stock to be represented, the assent required by statute was not given, and the mortgage is of no validity." In Hoppin v. Buffum, 9 R. I. 513, the court said: "The object of the stock-book, and of requiring transfers of stock to be recorded by the corporation, is for the protection of the corporation, to enable it to know who are its members, who are entitled to dividends, and for no purpose is it more important than to enable it to know who are entitled to

vote in case of an election." The language of the court *in re* Steamboat Co., 44 N. J. Law, 529, is equally emphatic on the proposition that the record determines the question who are stockholders in their dealings with the corporation, which embrace the payment and receipt of dividends, and the voting at stockholders' meeting for directors and for other purposes; although on application to a court of equity the stockholder might be compelled no give a proxy to another or to vote as such other should direct. Said the court: "The general rule is that the books of the corporation are the evidence of the persons who are entitled to the rights and privileges of stockholders in the management of the affairs of the corporation. With the single exception that stock really belonging to the corporation cannot, at any election for its directors, be voted upon, directly or indirectly (citing cases), the books of the corporation are the only evidence of who are the stockholders, and, as such are entitled to vote at elections. Downing v. Potts, 23 N. J. Law, 66. Neither the inspectors nor stockholders can dispute the right to vote of any one who appears by the company's books to be the holder of stock legally issued.

In Pender v. Lushington, 6 Ch. Div. 70, the articles of association provided that every member should be entitled to one vote for every ten shares, but should not be entitled to more than one hundred votes in all, and that no member should vote at any general meeting unless he had been possessed of his shares for three months previously thereto. It was held that the register of stockholders was the only evidence by which the right to vote could be ascertained, and that no vote of shareholders appearing on the register, and properly qualified, should be rejected on the ground that their shares had been transferred to them by other shareholders, for the purpose of increasing their own voting power, or with an object alleged to be adverse to the interests of the company, or on the ground that the holders were not beneficial owners of the stock. So, also, it is held that a person has a right to vote on stock standing in his own name as trustee for another, or on stock which he has pledged or hypothecated, if it be in his own name on the company's books; and that inspectors of the election, in determining the

qualifications of voters, have no authority to inquire whether the stockholder who appears by the books to be a stockholder is or not the real owner of the stock standing in his name. They must take the company's books as conclusive evidence of the qualifications to vote." To same effect are Coleb. Coll. Sec. § 282; 1 Mor. Priv. Corp. §§ 170, 483; Burgess v. Seligman, 107 U. S. 20–29, 2 Sup. Ct. Rep. 10. In State v. Smith, (Or.) 14 Pac. Rep. 814, (on rehearing, 15 Pac. Rep. 386,) it was held that the pledgee, who had secured a transfer to himself of the stock on the books of the corporation under the authority of the express language of the assignment of the stock, empowering the pledgee to transfer the stock to his own name on the books, was, nevertheless, not entitled to vote the stock. But the reason for the decision has no application in this jurisdiction. The court held that the power to make the transfer on the books, although unlimited, although without condition as to the time when it might be exercised, could not lawfully be exerted until the pledgee had destroyed the equity of the pledgor by foreclosure. This decision is clearly opposed to that of the court in Nicollet Nat. Bank v. City Bank, (Minn.) 35 N. W. Rep, 577, where the court affirmed a judgment against the defendant for conversion of stock, because it had refused to transfer the same upon its corporate books to the name of a pledgee thereof before foreclosure of the pledge, and while still a mere pledgee. This case recognizes the absolute right of the pledgee to such a transfer. Said the court: "Although the assignment to the plaintiff was for the purpose of collateral security, the plaintiff was entitled to have the same entered on the books of the bank." To same effect, Dayton Nat. Bank v. Merchants' Nat. Bank, 37 Ohio St. 215. The right of the pledgee to insist upon a transfer upon the books at once is recognized by numerous cases. Rich v. Boyce, 39 Md. 314; Hubbell v. Drexel, 11 Fed. Rep. 115–118; Coleb. Coll. Sec. § 272; and dissenting opinion of Lord, C. J., in State v. Smith, (Or.) Pac. Rep. 137, which accords with our views.

But our statute settles the question. It in express terms declares that a transfer of stock shall not be valid except between the parties, unless the transfer is entered upon the corporate

books. § 2915, Compiled Laws. Under such a statute, the condition of a pledgee with an unrecorded transfer would be similar to that of a mortgagee whose real or chattel' mortgage should not be recorded or filed. Nay, his situation would be worse. A mortgagee's lien in such a case cannot be defeated by the levy of an attachment without notice. But a creditor of a pledgor of stock, who attaches the same in ignorance of a transfer thereof, no transfer on the books having been made, secures a lien which is superior to the interest of the pledgee, and his paramount lien cannot be be defeated by subsequent notice of the transfer. *In re* Murphy, 51 Wis. 519, 8 N. W. Rep. 419; Fiske v. Carr, 20 Me. 301; Skowhegan v. Cutler, 49 Me. 315; Naglee v. Wharf Co., 20 Cal. 529; Weston v. Mining Co., 5 Cal. 186; Strout v. Mining Co., 9 Cal. 78; Fisher v. Bank, 5 Gray, 373; Sabin v. Bank, 21 Vt. 353; Cheever v. Meyer, 52 Vt. 66; Bank v. Gridley, 91 Ill. 457; Northrop v. Turnpike Co., 3 Conn. 549; Pinkerton v. Railroad Co., 42 N. H. 462; Ft. Madison Lumber Co. v. Batavian Bank, (Iowa) 32 N. W. Rep. 336; Colt v. Ives, 31 Conn. 25; Sibley v. Bank, 133 Mass. 515; Bank v. Williston, 138 Mass. 244; People v. Robinson, (Cal.) 1 Pac. Rep. 156. To say, in the light of this statute and its construction, that a power vested in the pledgee to record the transfer was intended by the pledgor not for the purpose of conferring on the pledgee power to protect himself while a pledgee by making such a record, is downright nonsense. Said the court in Rich v. Boyce, 39 Md. 314: "So far from the transfer of stock to the appellee's own name being a wrongful conversion, it was the exercise of an undoubted right, conferred upon him by the appellant. Without such right the pledge would have been doubtful security, as the stock would have been liable to execution or attachment by any creditor of the appellant." To same effect, Coleb. Coll. Sec. § 288. But where the pledgor not only authorizes a record of the transfer to be made by the pledgee, such record being essential to the latter's protection, but makes the transfer on the books himself, as in the case at bar, by surrendering his old certificates and issuing directly to the pledgee new certificates, signed by the pledgor himself as president of the corporation, no room is left for the inquiry whether the pledgee

had authority to make the transfer upon the corporate books, as in the Oregon case. In Day v. Holmes, 103 Mass. 310, the court held that a pledgee was justified in procuring new certificates to be issued to himself in place of stock assigned to him in blank, and that this act did not constitute a conversion of the stock. See, also, Coleb. Coll. Sec. §§ 288, 323.

The provision of the statute that a stockholder, to be entitled to vote, must be a *bona fide* stockholder, and have stock in his own name on the books, at least 10 days prior to the election, must be read and interpreted in the light, not only of the decisions holding that a pledgee is a stockholder, but also in connection with the legislation which, under the decisions and by its terms, makes it necessary for a pledgee to secure a transfer on the books to protect himself against the creditors of his pledgor. Knowing that stock is frequently pledged, and that the pledgee would secure a transfer on the books to protect himself, it must be assumed that the legislature intended he should be regarded as a stockholder with power to vote, for it has disqualified his pledgor to vote the stock after transfer; and it would be unjustifiable to impute to the law-making power a deliberate design frequently to leave a majority of the stock of a corporation without power to act, and thus render it impossible to hold a stockholders' meeting for any purpose. Unlike the doctrine of the common law, which allows any minority of the stockholders, however small, to constitute a quorum, (1 Mor. Priv. Corp. § 476,) our statute requires a vote of stockholders representing a majority of the subscribed capital stock (§ 2925, Comp. Laws) to elect directors. Moreover, the provision that the pledgor, and not the pledgee, should be liable for the debts of the corporation, to the extent of a stockholder's liability, clearly indicates that it was intended that the latter should have the right to make a transfer on the books, for without such transfer he is never liable. Anderson v. Warehouse Co., 111 U. S. 479, 4 Sup. Ct. Rep. 525. There is a class of cases in which the books are not conclusive of the right of the person to vote who appears upon the books to be a stockholder. The law will not allow the transfer upon corporate books to cover up the incapacity of the real owner to vote upon the stock. No corpora-

tion, in the absence of statutory permission, has any right to vote its own stock. Such stock having no vote, the colorable transfer of it upon the books will not give the person in whose name it stands authority to vote it. See *ex parte* Holmes, 5 Cow. 426; Frog Co. v. Havan, 101 Mass. 398. But there is a marked difference between such a case and the case of a pledgee who in good faith holds the legal title to the stock. The rights of the pledgor are in equity. He may, in a proper case, compel the pledgee to give him a proxy by a bill in equity. Scholfield v. Bank, 2 Cranch, 115; Vowell v. Thompson, 3 Cranch, 428; McHenry v. Jewett, 90 N. Y. 58; Hoppin v. Buffum, 9 R. I. 513. The fact that such suits have been instituted indicates the necesity for them. A pledgor who has a legal right to vote stock, notwithstanding it has been transferred on the corporate books, need not resort to equity for a proxy. Said the court in the last case cited: "If the real owner wishes to have his name, or the true state of facts, appear on the books, he has his remedy in equity to compel a proper transfer, or to compel the pledgee to give a proxy, as was done in the case of Vowell v. Thompson, 3 Cranch, C. C. 428." The pledgee sustains a relation to the corporation. This is determined by the record. In dealings with the corporation, his status as a stockholder is fixed by the books. "As between a corporator and the corporation the records of the corporation or its stock-book, as it is called, is the evidence of their relation. Meetings of the stockholders, elections, and dividends, etc., are regulated by this record." Bank of Commerce's Appeal, 73 Pa. St. 59. If the equities and contract relations between different persons, claiming the right to vote the same stock, are to be considered in determining the question of the right to vote, few elections would be certain, and the courts would often be called upon to investigate a multitude of collateral issues in determining who had been elected directors, or whether any other business transacted at a stockholders' meeting had the support of the requisite amount of stock. Said the court in Hoppin v. Buffum, 9 R. I. 513: "Upon any other rule, it could never be known who were entitled to vote until the courts had decided the dispute. The corporation or its of-

ficers would, have to decide it for the time, and it would leave the election in uncertainty."

The record fixes the status of a person as a stockholder; and another having an equitable right to wield the power of a stockholder, as between himself and the one who has the legal right, must enforce that equitable right by the decree of a court, before he can be recognized as a stockholder in his relations with the corporations. The legal title to the stock determines the right to vote, and the courts, on *quo warranto* or on summary proceedings under the statute, cannot regard and enforce a merely equitable right. It is true that under the statute the court is authorized to award broader relief than on *quo warranto*. It may declare a different set of directors elected, but the proceeding in its essential nature is a proceeding at law to determine who had the legal right to vote as stockholders at a stockholders' meeting for directors or for other purposes. That the legal title to stock hypothecated and transferred to the creditor on the books is in the creditor so far as dealings with the corporation are concerned is elementary. National Bank v. Watsontown Bank, 105 U. S. 217; Wilson v. Little, 2 N. Y. 448; Ang. & A. Corp. § 580; Pullman v. Upton, 96 U. S. 328; Bank v. Case, 99 U. S. 628; Coleb. Coll. Sec. § 282. It is not strictly accurate to speak of the creditor holding hypothecated stock transferred on the corporate books as a mere pledgee. His relation to the debtor and to the corporation may be more accurately described. He is a holder of the legal title to stock as collateral security. The debtor has a general right to the return of his property and its title, on payment of his obligation. By his own voluntary act, the debtor has conferred upon the creditor all the rights of a stockholder by authorizing him to transfer the stock on the corporate books. In this case the debtor himself made the transfer, by canceling his certificates, and issuing in their place others directly to the creditor's agent, signed by himself as president of the corporation. We are clearly of the opinion that Faulkner, and not Edwards, was entitled to vote the 546 shares of stock in question. The agreement between Hill and Edwards that the stock should be placed in the name of such person as Hill should designate, for the

purpose of giving Hill control of the corporation, adds nothing to his legal rights, but it would be an important element in the case were Edwards here invoking equity to compel Hill to give him a proxy. The latter could use it as a defense to an application for such relief. If, however, as is contended by Mr. Edwards, Hill agreed to leave him in control of the corporation, a resort to equity to compel the giving of a proxy would be his proper remedy. Such issues cannot be tried at every election, nor is it the policy of the law that they should be. It would, indeed be a startling doctrine that the legality of business transacted at stockholders' meetings should be subject to the ultimate decision of complicated questions arising between different claimants of the same stock. If Faulkner voted this stock at the meeting, it is our duty, under the statute, to declare the other set of directors elected. *Ex parte* Desdoity, 1 Wend. 98; *in re* Barker, 6 Wend. 509; *in re* Election of Directors of Steamboat Co., 44 N. J. Law, 529; *in re* Cape May & D. B. N. Co., (N. J.) 16 Atl. Rep. 191. Before discussing this, however, we should dispose of a further question relating to the qualification of Faulkner to vote this stock.

The statute declares that a stockholder must be a *bona fide* stockholder to entitle him to vote. This phrase "*bona fide*," in this connection, is used in contradistinction to "bad faith." In re-election of directors of St. Lawrence Steamboat Co., 44 N. J. Law 529, the statute required a person to be a *bona fide* stockholder to be eligible to the office of director. The court said, in construing this statute: "A stockholder may have purchased stock with a view of becoming a director, or have obtained it by gift, or he may hold it upon a trust, and be qualified to be a director. If the stock was legally issued, and was not the property of the corporation, and the legal title is in him, he is *prima facie* capable of being a director, and his right to be a director, in virtue of his legal title to such stock, can be impeached only by showing that title was put in him colorably, with a view to qualify him to be a director for some dishonest purpose, in furtherance of some fraudulent scheme touching the organization or control of the company, or to carry into effect some fraudulent arrangement with the company." But we do not think that

Faulkner voted this stock for the persons who claim to be elected as directors. It is undisputed that he did not vote the stock at the meeting over which Mr. Edwards presided. At the hour named for the meeting, Edwards assumed to act as chairman, and directed a Mr. Flint to act as secretary. This was without objection. The call was then read. Next Edwards stated that the object of the meeting was to elect directors for the ensuing year. Ballot boxes were then prepared, and nominations for directors were made by Edwards and by Mr. Faulkner. After that some other routine business was transacted, and then an adjournment was taken, on motion of Mr. Faulkner, until afternoon. When the meeting was reopened, after adjournment, Faulkner moved to reconsider all that had been done, on the ground that the president of the corporation had no right to act as chairman of the stockholders' meeting without election, and that he had not been elected or chosen chairman. In a word, Faulkner claimed that the meeting had not been properly organized. We think his claim came too late. He had acquiesced in the organization and had participated in the business of the meeting. He had even recognized, by making nominations for directors, that at that meeting, as so organized, the candidates for directors should be voted for. Failing in his efforts to reorganize the meeting, he withdrew from it without voting, or offering to vote, his stock for directors. It is true that Edwards had notified him that he would not be permitted to vote his stock for directors. But this would not dispense with affirmative action on his part. His secret intention to vote for certain persons for directors, without expressing that intention in a legal way, would not elect any one to office. It is true that Edwards might, and probably would, have refused to receive the ballot which he might have offered. But it was not in the power of Edwards, or of any one else, to prevent his voting at that meeting. There was therefore no reason for his withdrawing. It was his duty to remain at the stockholders' meeting as organized, and vote his stock at that meeting This he did not do and we are of opinion that voting the stock at another meeting, which he held with others in the same room, at the same time, was of no effect. A minority must have a right to insist that,

after a meeting is organized, the majority shall not withdraw from it, and organize another meeting, at which the minority must appear or lose their rights. Once concede the right, and there is no limit to the number of wrecked meetings which may, at the caprice of a majority, precede the transaction of any business.

Suppose the vote of two-thirds of the stock voted is required to carry a measure under the law or the by-laws of the corporation. Stockholders having more than one-third of the stock present can vote it down. Can a majority, constituting less than two-thirds, withdraw from an organized meeting, and thus compel the minority to follow them, or lose their right to defeat the measure? We believe it would be unwise, and unjust as well, to sanction such a rule. It is not essential to the protection of the majority who have the right to vote at the meeting as organized. On the other hand, the contrary rule is necessary for the protection of the minority. It is true that mere irregularities in conducting a meeting will not vitiate an election, but when a meeting is once organized it is not a mere irregularity to withdraw from it and start a new one. The persons voted for at the second meeting cannot be adjudged to have been elected directors, without deciding both that the second meeting was valid and that the first was illegal. "The acts of a majority are not binding upon the company, unless the proceedings are conducted regularly, and in accordance with general usage, or in the manner prescribed by the charter and by-laws of the company." 1 Mor. Priv. Corp. § 487, and cases. See *in re* Long Island R. Co. 19 Wend. 37. To elect directors, they must receive the vote of a majority of the subscribed capital stock. § 2925 Comp. Laws. This is fatal to the election of the persons voted for at the legal meeting. Only twelve shares were lawfully voted at that meeting. It was therefore error to dismiss the petition. It was the duty of the court, under the statute, to set aside the old, and order a new, election. *In re* Long Island R. Co., 19 Wend. 37; § 2932, Comp. Laws.

There remains to be considered the qualification of one of the directors voted for at the pretended meeting by Faulkner. To be a director one must be a holder of stock. § 2926, id. Short-

ly before the election Faulkner transferred to B. F. Spaulding ten of the 556 shares held by him, and on the day of election Spaulding demanded a transfer on the books. This request was refused. We do not think that he was eligible to the office of director. He did not appear to be a stockholder upon the books of the corporation. If he was entitled to have his transfer recorded, the corporation would be liable for its refusal, and he could recover the full value of his stock. 1 Mor. Priv. Corp. § 217 and cases cited. Or he might compel a transfer by an application to a court of equity. Id § 220, and cases cited. But until such transfer is made he is not, under our statute, a stockholder in his relations with the corporation. Our statute in express terms declares, as we have already seen, that a transfer of stock, not entered upon the corporate books, shall not be valid for any purpose, except as between the parties. § 2915, Comp. Laws. If it is effectual to qualify the transferee for the office of director, it is valid for a very important purpose. We may not disregard the imperative provision of this law, nor can we shut our eyes to its very obvious policy. It would be as unfortunate, and as fruitful of confusion and litigation, to have the eligibilty of a person for the office of director left in doubt at a stockholders' meeting to elect directors, as to have left in uncertainty the qualification of a person to vote as a stockholder for a director at that meeting. Under a statute couched in the same language, it has been held that the assignor of stock not transferred on the coporate books, and not the assignee thereof, has the right to vote the stock at a meeting to elect directors. People v. Robinson, 64 Cal. 373, 1 Pac. Rep. 156; State v. Pettineli, 10 Nev. 141. See also, 1 Mor. Priv. Corp. § 483; State v. Ferris, 42 Conn. 560. The decisions in New Jersey and Oregon (44 N. J. Law, 529, 14 Pac. Rep. 814) are not of controlling force here, because our statute, by both its terms and its manifest spirit, compels the adoption of a different doctrine. A person who desires to be recognized as a stockholder, for the purpose of voting, of being a director, of suing for dividends, must secure such a standing by recording his transfer on the corporate books. Nor will the assignee be without remedy. The law affords him the two remedies referred to against the corporation for an unwar-

ranted refusal to make the transfer, and he may, by a resort to a court of equity, compel his transferrer to give him a proxy after he has been unjustifiably deprived of his right to have his name entered upon the books of the corporation as a stockholder. Moreover, he can always insist on a transfer as a condition precedent to his purchase or loan on the security of the stock. Business prudence would prompt this caution.

In cases where the corporation has a lien on the shares of its stockholders, the purchaser, without a transfer on the books, takes subject to the lien, and the corporation may refuse to record the transfer until the lien is discharged. 1 Mor. Priv. Corp. § 203. By insisting upon a transfer upon the books before he pays his money, the purchaser will secure his stock free from such lien, as the act of the corporation in making such transfer would be a waiver of the lien. Id. § 208; National Bank v. Watsontown Bank, 105 U. S. 217. In Helm v. Swiggett, 12 Ind. 194, it was held that a corporation, whose charter gave it a lien upon the stock of a stockholder for a debt owing to the corporation, had no lien for a debt of the assignee of stock on stock assigned, but not transferred on the books, the court saying: "Ownership simply of a certificate of stock in the bank did not constitute the owner of it a stockholder. It required a transfer of the stock to him upon the books of the bank." Referring to the provision requiring a transfer upon the books, Mr. Morawetz says: "It follows, therefore, that a transfer upon the books is essential to a novation of the contract of membership, where there is a provision of this description. An assignment of shares, although valid as between assignor and assignee, would not effect their legal relationship to the company until after a transfer was entered upon the books," etc. Volume 1, § 170. Under our statute no person can claim to be a stockholder, in his dealings with the corporation, until his name appears in some way as stockholder on the corporate books; and as the statute requires a person to be a stockholder, not stock-owner, to entitle him to be a director, we are clear that Spaulding was not eligible to that office. "The directors of a corporation are generally required to be shareholders by express provisions of the

company's charter or articles of association. A person is a shareholder, within the meaning of a provision of this description, if he holds shares on the books of the company, but not if he is merely the holder of the certificate. It has been held that the transferee on the books is eligible, although he is not the real owner of the shares, and the transfer was executed for the sole purpose of making him a director. A different rule might apply where the statute expressly requires the directors to be the owners of shares." Id. § 506. Had Spaulding appeared as a stockholder on the corporate books, he would have been qualified to hold the office of director, although the transfer had been made to him for the sole purpose of so qualifying him. As he did not so appear, he was not eligible to that office.

It was urged that as Faulkner subsequently to the issue of the stock had indorsed it in blank, and left it in the possession of Hill, that he (Faulkner) had ceased to be a stockholder, and therefore had no right to vote the stock or be a director. Under our statute providing that an unrecorded transfer of stock shall not be valid for any purpose except between the parties, we are clearly of the opinion, as we have already stated in another connection, that until a transfer should be made on the books Faulkner would continue to be a stockholder, for the purpose of voting the stock or of being eligible to the office of director. People v. Robinson, 64 Cal. 373, 1 Pac. Rep. 156; State v. Pettineli, 10 Nev. 141; 1 Mor. Priv. Corp. § 483; State v. Ferris, 42 Conn. 560. There are certain findings of fact which we are unable to discover any evidence in the record to sustain. The view the trial court took of the law may, however, explain why they are embodied in the case. The court finds that Hill, in electing directors, was not to put in men unsatisfactory to Edwards. Mr. Faulkner, on cross-examination by Mr. Edwards himself, stated that Edwards said to Hill that Hill was to have a majority of the directors. Mr. Edwards then remarked: "Satisfactory to me, of course?" To this the answer was: "He was to pick his own men." This is all the evidence on the point. Mr. Edwards did not testify in the case. It is true that the record seems to show that Hill was not to put in men who were enemies of Edwards, but this will not justify a finding that the majority of the di-

rectors were to be satisfactory to Edwards. Many persons who were not his enemies might nevertheless be unsatisfactory to him. The most that it can be claimed that the evidence discloses is that the question as to what men the majority of the board should be composed of was to depend upon a fact not to be determined by Hill or Edwards finally, but by the courts; whereas, the finding would make Edwards the sole and final arbiter of the question. This would be repugnant to the spirit of the arrangement which was to prevent Edwards from dealing with the corporation and its assets to the prejudice of Hill. Prior to this time Hill had held, as collateral for this same debt, stock in another corporation controlled by Edwards. Hill discovered that the organization of this corporation had been suffered to lapse; that his stock had therefore become worthless; and that Edwards had formed a new corporation. This stock had not been transferred on the books of the corporation, and Edwards, therefore, had full control of it, and by means of it had had complete control over the corporation. When Edwards proposed to give Hill stock in the new company as security, Hill said: "What good would that be if you form a third company?" To this Edwards replied that, to prevent this, Hill could have the stock put in his own name, and have absolute control, and then he would be safe, and a third company could not be started. Certainly, Mr. Hill would have no control whatever if Mr. Edwards were allowed arbitrarily to pronounce unsatisfactory every director for whom Mr. Hill or his representative should vote this stock. The effect would be that Mr. Hill would have control only on condition that he suffered Mr. Edwards to control him in exercising that control. Other findings it is not important to refer to, as a new election must be had.

The third conclusion of law is unwarranted. It states that Faulkner held this stock subject to the joint order of Hill and Edwards. Having made a transfer of the stock upon the records by issuing new shares directly to Faulkner, Edwards, as pledgor had no control over the stock without paying his debt. He could not control Faulkner in voting it without appealing to a court of equity under peculiar circumstances creating an equity in his behalf. Such circumstances are not shown by this record

to exist in this case. This he did not do, and it was error to hold that he could, at a stockholders' meeting, exercise any control over the stock or over Faulkner, who held it. The judgment of the district court is reversed, and that court is directed to render judgment, setting aside as illegal, the election of A. W. Edwards, H. C. Plumley, M. R. Flint, Alexander Griggs, and William A. Stevens, as directors, and ordering a new election to be had as required by the statute. The old directors will hold their office until their successors are elected and qualified. § 2924, Compiled Laws. It will be so ordered. All concur.