(April 15, 1909.)

M. J. HAYNES et al., and the BUFFALO HUMP CONSOLIDATED GOLD MINING COMPANY, Limited, a Corporation, Appellants, v. EDWARD M. GRIFFITH et al., and W. G. BROWN, as Sheriff of Idaho County, Idaho, Respondents.

[101 Pac. 728.]

STOCKHOLDERS—RIGHT TO VOTE STOCK—PROXY—ANNUAL ELECTIONS—FRAUD—CONSPIRACY—SALARY OF SECRETARY.

1. Where an escrow agreement is entered into between S., H. and G., in which it is stipulated that in order to secure a promissory note executed by H. and G. to S., a certificate of stock is to be held by a bank as security for such note, and upon failure to pay such note the bank is authorized and empowered and instructed

to deliver such certificate to S., in whose name the same has been issued, the bank is authorized and empowered to deliver such certificate to S. upon the failure to pay said note at maturity.

2. Upon the delivery of such certificate by the bank to S. and the transfer of such stock upon the books of the company in the name of S., S. has the right to vote such stock and the right to give a proxy to G. to vote the same.

3. Where a stock certificate is issued by a corporation to H., the president of the corporation, and H. and G. execute a promissory note to S. and deposit in escrow a new certificate of stock issued to S. and signed by H. as president and G. as secretary of such corporation, to be delivered to S. upon default in the payment of such note; and it appears from the escrow agreement that such certificate upon the payment of such note shall be returned to H., supported by the evidence of G., that the stock thus pledged belonged to H., the evidence is sufficient to support a finding that the stock thus pledged belonged to H., and should be deducted from the stock previously issued to H.

4. Under sec. 2735, Rev. Codes, every *bona fide* stockholder, "having stock in his own name on the stock books of the corporation, at least ten days prior to the election" of directors, is entitled to vote at such election; and the stock book of the corporation is *prima facie* evidence of ownership, and sufficient to support a finding of the court that such person was the owner of such stock and entitled to vote the same.

5. Where a corporation has a by-law that "no indebtedness over one thousand dollars shall be incurred by the company," such by-law is not violated by a resolution of the board of directors providing for the compensation of the corporation's secretary at fifty dollars per month.

6. Neither is such by-law violated by the allowance by the board of directors of a claim made by the secretary for salary due him at the rate of fifty dollars per month, aggregating a sum in excess of one thousand dollars.

7. *Held,* that the evidence in this case supports the findings of the court.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for the County of Idaho. Hon. Edgar C. Steele, Judge.

Action to vacate and set aside judgments rendered against a corporation and to annul the election of directors and presi-

dent, and for an accounting by the secretary. Judgment for defendants. Plaintiffs appeal. *Affirmed.*

Clay McNamee, and Jas. De Haven, for Appellants.

In a clear case of hypothecation, the pledgor may vote. (*Ex parte Willcocks,* 7 Cow. 402, 17 Am. Dec. 525; *State ex rel. Reed v. Smith,* 15 Or. 98, 14 Pac. 814, 15 Pac. 137, 386; *Brewster v. Hartley,* 37 Cal. 15, 99 Am. Dec. 237; *State v. Smith,* 15 Or. 98, 14 Pac. 814, 15 Pac. 137, 394.)   The secretary of the corporation had no right to make a transfer on the books until the requirements of the laws of this state and the by-laws of the corporation had been complied with. (*Tafft v. Presidio etc. R. R. Co.,* 84 Cal. 131, 18 Am. St. 166, 24 Pac. 436, 11 L. R. A. 125; *Supply Ditch Co. v. Elliott,* 10 Colo. 327, 3 Am. St. 586, 15 Pac. 691.)

"The sale by a shareholder of his shares in a corporation will *ipso facto* revoke any proxies made or given to vote in respect of such shares."   (10 Cyc. 338, 339, citing *Ryan v. Seaboard etc. R. Co.,* 89 Fed. 397.)

E. M. Griffith, and L. Vineyard, for Respondents.

The person or persons in whose name stock stands on the corporate books of a company are entitled to vote the same. (See. 2735, Rev. Codes; *Hoppin v. Buffum,* 9 R. I. 513, 11 Am. Rep. 291; *In re Argus Printing Co.,* 1 N. D. 434, 26 Am. St. 639, 48 N. W. 347, 12 L. R. A. 781.)

The salary of the secretary being approved and ordered paid by the board of directors at a regular meeting thereof, was an absolute waiver by said corporation of any objections that its by-laws had been violated, and a ratification of said claim.   (*Underhill v. Santa Barbara etc. Co.,* 93 Cal. 300, 28 Pac. 1049; *Phillips v. Sanger Lumber Co.,* 130 Cal. 431, 62 Pac. 749, and cases cited.)

STEWART, J.—On September 18, 1907, the respondent, Edward M. Griffith, recovered a judgment by default against the Buffalo Hump Consolidated Gold Mining Company, Ltd., in the district court of the second judicial district, in and

for Idaho county, for the sum of $1,300.   Execution was is-
sued on said judgment and on Jan. 18, 1908, all the prop-
erty of the said defendant corporation was sold to satisfy
said judgment.   On Dec. 17, 1907, the respondent, W. H.
Casady, recovered a judgment by default against the Buffalo
Hump Consolidated Gold Mining Company, Ltd., in the pro-
bate court of Idaho county, for the sum of $424.15; and on
Jan. 18, 1908, said Casady redeemed from the sale to the re-
spondent Griffith.

This action is brought by appellants to restrain the re-
spondent, Brown, as sheriff of said Idaho county, from exe-
cuting and delivering a deed upon the sale made upon the
Griffith judgment, and to vacate and set aside the judgments
above described, and to cancel and declare illegal the elec-
tion of H. L. Herzinger and J. T. McDuffie as directors and
J. T. McDuffie as president of said corporation; and for an
accounting by Griffith for all moneys received by him as sec-
retary and treasurer of the appellant corporation.   The action
is based upon the claim that the judgments obtained against
the appellant mining company were fraudulent and the re-
sult of a conspiracy entered into between Edward M. Griffith,
J. T. McDuffie and H. L. Herzinger in attempting to provide
by resolution for the compensation of Griffith as secretary,
and the election of McDuffie and Herzinger as directors, alleg-
ing that in fact no resolution was passed authorizing the pay-
ment of a salary as secretary; and that the vote cast for
McDuffie and Herzinger as directors was fraudulent and void,
in that stock was voted at such election which was not owned
or held or authorized by the persons voting the same.

M. J. Haynes, L. C. Staley, J. J. Staley, A. C. Atkinson,
C. M. Heater, S. V. Meek, Marion Spawr, Adolphus Briggs.
J. N. Snider, E. L. Foreman, N. P. Haynes, F. M. Peck,
Henry Murray, George Von Yarf, appellants, are stockholders
in the Buffalo Hump Consolidated Gold Mining Company,
Ltd., a corporation and appellant, and with the company
bring this action.

The answer admits that the plaintiff is a corporation; that
the defendant Griffith is the secretary thereof; that the judg-

ments described in the complaint were recovered and the sale of the corporate property; and specifically denies the other allegations of the complaint. The cause was tried to the court and the court made findings of fact and conclusions of law, and upon the issues presented by the pleadings found in substance as follows:

1. That the Buffalo Hump Consolidated Gold Mining Company, Ltd., was an Idaho corporation.

2. That it was organized in the year 1905 with a capital stock of 1,500,000 shares of the par value of one dollar each; and that 600,000 shares of the capital stock was placed in the treasury and designated as treasury stock for the development of the property.

3. That on July 29, 1907, a stockholders' election was held at which there was represented in person and by proxy 527,000 shares of the capital stock which was voted for H. L. Herzinger, J. T. McDuffie, L. C. Staley, F. M. Peck and Edward M. Griffith, as directors; and that the stock voted at such stockholders' election belonged to the persons voting the same or the persons who gave their proxies to vote such stock.

3½. That the 100,000 shares given by Haynes to Staley as security and left in escrow, while not taken down by Staley, yet was entered upon the stock books at the time the stock was given by the secretary in the name of Staley and was voted by Griffith under a proxy given by Staley.

4. That at the time of their election McDuffie, Herzinger and Griffith were the owners of more than 100,000 shares each of the capital stock of the corporation.

5. That at the meeting of the board of directors, at which was present McDuffie, Herzinger and Griffith, three of the newly elected directors who constituted a quorum, McDuffie was elected president, Staley vice-president, Griffith secretary and treasurer.

6. That the stockholders' meeting, at which the above-named directors were elected, was regularly and legally held and free from any fraud; and the election was in all things

in due form and pursuant to law and the regulations and by-laws of said corporation.

7. That at a regular meeting of the board of directors on July 23, 1905, the board passed a resolution fixing the salary of the secretary and treasurer at fifty dollars per month and necessary expenses; and that in pursuance of such resolution Griffith performed services as secretary and the same has not been paid.

8. That thereafter at a regular meeting of the board he presented his claim for salary as secretary and the same was allowed by the board in the sum of $1,200, and at the same time said Griffith presented a further claim for $100, being a claim held by the Bank of Camas Prairie against the said corporation on an overdraft and assigned to Griffith.

9. That suit was commenced by Griffith, service duly and regularly made, and judgment was recovered by default for the sum of $1,200 with interest, and for the further sum of $100 and interest.

10. That the claims of Griffith were just and legal obligations of the corporation, and that the board of directors had authority and right to allow the same, and the allowance of the same was free from any fraud, collusion, secrecy, stealth or irregularity.

11. That the 100,000 shares given by Haynes to Staley as security were entered upon the stock books in the name of Staley, and were entitled to be voted by the secretary under a proxy given by Staley.

12. That Griffith in bringing such suit did so free from any fraud, collusion, concealment, stealth or irregularity on his part or on the part of McDuffie, the president; and that the proceedings were legal and free from any fraud or collusion.

13. That at the time of bringing said suit McDuffie was the president of said corporation.

As conclusions of law from the foregoing facts the court found that the incorporation of the appellant corporation was regular and legal; second, that the election of its board of directors and officers was regular and legal and free from any fraud, fraudulent accommodation or irregularity; third,

that the minutes of the corporation, fixing the salary °of the secretary, were regularly made and entered and free from any fraud, concealment, stealth or irregularity; fourth, that the salary and the other .claim for $100 sued upon was regularly due Griffith at the time he brought suit therefor; fifth, that the defendants were entitled to a dismissal of said case with costs. A decree was accordingly rendered for the respondents dismissing said action and for costs. The appeal is from the judgment.

The real contest in this case arises out of the annual election of stockholders held on July 29, 1907, at which the respondents, Griffith, McDuffie and Herzinger, and the appellants, L. C. Staley and F. M. Peck, were elected directors and the subsequent election of McDuffie as president. At this annual stockholders' meeting the record shows there was present and participated in the election 527,000 shares of stock, which it appears at that time was a majority of the stock issued.

It is contended on the part of the appellants that at this election E. M. Griffith voted 50,000 shares of his own stock, 100,000 shares upon a proxy from L. C. Staley, and 259,000 shares upon a proxy from F. M. Peck, when in truth and in fact said Staley was not the owner of said stock, and said Peck was not the owner of 137,000 shares of stock attempted to be covered by said proxy; and that the 50,000 shares voted by Griffith as his own property had been pledged to L. C. Staley as security for a loan of $1,000 and therefore he had no right to vote the same; and that the 287,000 shares thus voted by Griffith were illegal, and by reason of such fact there was not represented at such election a majority of the stock; and therefore such election was illegal and McDuffie and Herzinger were not elected directors of such corporation.

In this connection it may be observed that no contest was made as to the election of Griffith by reason of the fact that he had prior to such election been the secretary and treasurer of such corporation, and it is admitted that he would continue to hold such office until the same was filled by election.

As to the Staley proxy, it appears that L. C. Staley was the owner of 5,000 shares of stock; that in the spring of 1906

it became necessary to secure means with which to pay for the development work upon said property; that Griffith was the secretary of the company and looking after the company; that he had called upon the other stockholders and urged them to do something in the direction of providing means for developing and caring for the property, but that they did not respond; that he had correspondence with Staley. M. J. Haynes was a friend and previously had been a neighbor of the Staleys in Pullman, Washington. Haynes and Griffith visited Pullman, Washington, and interviewed the Staleys for the purpose of ascertaining what could be done to raise means for the benefit of the property, and it was expected that Haynes could secure this money from the Staleys. This resulted in securing $1,000 from L. C. Staley; and an agreement was entered into March 31, 1906, between Staley, Haynes and Griffith in which it was provided in part:

"Witnesseth, that on this day the said M. J. Haynes and E. M. Griffith, in order to secure the payment of the said note according to the terms and conditions thereof, have this day caused to be deposited in escrow in the Pullman State Bank, a certificate numbered 60, dated March 31, 1906, for one hundred thousand shares of stock of the Buffalo Hump Consolidated Gold Mining Company, Limited, with instructions to the cashier of said bank as follows, to wit:

"If the aforesaid note together with the interest thereon shall not be paid on or before the maturity of the same and according to the terms and conditions thereof, then in that event the cashier of the said the Pullman State Bank is hereby authorized, empowered and instructed to remove the aforesaid certificate of stock from the envelope enclosing the same and deliver the said certificate to the said L. C. Staley in full payment and settlement of said note."

This agreement further provides that if the note be paid, then the certificate should be returned to M. J. Haynes. The note was not paid on October 1, 1906, when due.

Stock certificate No. 60, dated March 31, 1906, for 100,000 shares of stock of the Buffalo Hump Consolidated Gold Mining Company, Ltd., was issued to L. C. Staley and signed by M. J. Haynes, president, and E. M. Griffith, secretary,

and was placed with said escrow agreement; and when October 1, 1906, came and the note given was not paid, the cashier of the bank as authorized in the escrow agreement removed the certificate of stock (No. 60) from the envelope inclosing the same and delivered the said certificate to the said L. C. Staley.

It is contended by appellants: First, that under this agreement one-half of the 100,000 shares deposited in escrow was to be taken from the stock owned by Griffith, one-half from stock owned by Haynes; second, that under this escrow agreement the stock was pledged to Staley and that Staley could not acquire ownership or the right to vote such stock until he had foreclosed said pledge in accordance with law.

It is apparent from this agreement and from other evidence in the case that the stock left as security with the Pullman State Bank was stock which was owned by Haynes. The agreement specifically provides that if the note is paid, the certificate should be returned to Haynes, thus clearly indicating that it was Haynes' stock that was pledged; not only that, but Griffith was a stranger to the Staleys, and the arrangement was made by reason of their acquaintance with and friendship for Haynes; and it was his stock that was left with the bank as security for the Staley loan.

The record further shows that stock certificate No. 23 had been issued to M. J. Haynes and upon default of the payment of the note given to Staley the stock book shows that certificate No. 60 was issued for 100,000 shares to L. C. Staley and was transferred from M. J. Haynes. We are satisfied that the evidence clearly establishes the fact that the stock left with the Pullman State Bank was Haynes' stock, and under the escrow agreement it was the duty of the bank, upon failure to pay such note, to deliver the certificate to Staley. This is clearly provided for in the agreement. This all took place in March, 1906, more than a year before the annual stockholders' election.

At the time this certificate was issued Haynes and Griffith were in Pullman. They did not have the stock book with them but they did have this blank certificate, and it was

numbered 60 and issued to Staley; and when the note was not paid it was delivered to Staley. Griffith, the secretary of the corporation, made the stock book of the corporation read in accordance with the arrangement when this money was borrowed; that is, the stock book showed the issuing of certificate No. 60 for 100,000 shares to L. C. Staley, dated March 31, 1906, and that it was transferred from original certificate No. 23 issued to M. J. Haynes. This certificate was held by Staley at the time the proxy was given to Griffith to vote the same; and the stock books of the corporation showed that the certificate of stock had been issued to him.

Under the provisions of sec. 2735, Rev. Codes (Rev. Stat. 2599), Staley had the right to vote the stock standing in his name on the books of the corporation. This section among other things, provides:

"At all elections or votes had for any purpose, there must be a majority of the subscribed capital stock, or of the members, when there is no capital stock, represented either in person, or by proxy, in writing. Every person acting therein in person, or by proxy, or by representative, must be a member thereof, or a *bona fide* stockholder, having stock in his own name on the stock books of the corporation, at least ten days prior to the election."

Under this section of the statute the stock standing on the stock books in the name of L. C. Staley, and Griffith holding a proxy from Staley, gave Griffith the right to vote such stock at the annual election of stockholders in July, 1907. (Rev. Codes, 2735; 2 Cook on Corp., secs. 610, 611.)

This also disposes of the right of Griffith to vote the 50,000 shares which appellants contend were pledged to the Pullman bank as security for the $1,000 loan, for if the stock, left with the Pullman bank to be turned over to Staley upon failure to pay the note, was Haynes' stock and not Griffith's, then Griffith did not lose the right to vote the 50,000 shares of his own stock, as the same was not given as security for such note.

This brings us to a consideration of the right of Griffith to vote the Peck stock. The contention made by appellants

with reference to the Peck stock is, that while 259,000 shares of stock had originally been issued to Peck, yet at the time the proxy was given and the election held he was the owner of but 122,000 shares. An examination of the record, however, shows that upon the date of said election, and for more than ten days prior thereto, the stock book of the appellant corporation showed F. M. Peck to be the owner of 259,000 shares of the capital stock of said corporation.

The court finds that at the date of the annual election this stock was owned by F. M. Peck. If it were owned by Peck, then Peck had authority to give a proxy to Griffith, and counsel make no contention upon this appeal but what Griffith under the proxy from Peck had authority to vote whatever stock Peck owned at the date of such election. There is no other person making claim before this court to be the owner of any part of the Peck stock, and although appellants contend that Peck had sold 137,000 shares of the 259,000, notwithstanding that fact, we think the evidence sufficient to support the findings of the court.

A very well-considered case bearing upon the questions involved in this case is that of *In re Argus Printing Co.,* 1 N. D. 434, 26 Am. St. 639, 48 N. W. 347, 12 L. R. A. 781. It will be seen that under the provisions of sec. 2735 that every "*bona fide* stockholder, having stock in his own name on the stock books of the corporation, at least ten days prior to the election," has the right to vote such stock.

It is conceded that the stock book showed the 259,000 shares of stock to be in the name of F. M. Peck. Whether he was the *bona fide* owner thereof is a question of fact, and in the absence of a showing that some other person had the right to vote such stock, the stock book is *prima facie* evidence of ownership, and sufficient to support a finding of the court that he was the owner of such stock. We think, therefore, the evidence in this case clearly supports the findings of the court, that at the time the annual election was held the 100,000 shares of stock under controversy stood upon the stock book in the name of L. C. Staley; and that the 259,000 shares of stock under controversy stood upon the stock books in the

name of F. M. Peck; and that E. M. Griffith held a proxy from these two stockholders to vote all the stock owned by them. This gave Griffith clearly the right to vote the stock of Staley and Peck. (2 Cook on Corp., secs. 610, 611.)

The author at sec. 610 quotes from *Hoppin v. Buffum*, 9 R. I. 513, 11 Am. Rep. 291, as follows:

"In a case of a dispute as to a right to vote, the books of the corporation are the *prima facie* evidence; at any rate, the corporation cannot be required to decide a disputed right. . . . . Upon any other rule it could never be known who were entitled to vote, until the courts had decided the dispute."

The court finds that at the stockholders' election on July 29, 1907, there was represented in person and by proxy 527,000 shares of the capital stock, and was voted for H. L. Herzinger, J. T. McDuffie, F. M. Peck and Edward M. Griffith as directors; and that the stock voted at such stockholders' election belonged to the persons voting for the same or to the persons who gave their proxies to vote such stock.

This finding, we think, is supported by the evidence. If this finding is supported by the evidence, then the election held upon this day was regular and legal. It is, however, argued by counsel for appellant that a conspiracy was entered into between Griffith, McDuffie and Herzinger, by which no defense was made to the actions of Griffith and Casady against the appellant corporation. This argument is based upon the claim that the purported resolution to pay the secretary a salary was never adopted by the corporation. In answer to this contention, however, the record shows such resolution to have been adopted and the clear weight of the evidence, independent of the resolution, shows that it was adopted; and the court finds that the board of directors adopted such resolution and allowed the claim of Griffith for such salary, and we think the evidence clearly supports this finding.

It also appears that this resolution was passed in 1905, more than two years prior to the annual election in July, 1907, and existed as a record of the board of trustees on and after that date, and was never questioned by anyone connected with the organization until the bringing of this suit.

While it is true that Haynes denies that the resolution was passed, yet, as stated, it appears of record upon the corporate books and has so remained since its adoption. This together with the evidence of witnesses, that it in fact was passed as recorded, conclusively establishes the fact to our minds that the board of directors passed this resolution and knew of its existence. If the corporation adopted a resolution authorizing the secretary and treasurer to act as such and fixing his salary at fifty dollars per month, and he performed such services, then he clearly was entitled to such compensation, and the mere fact that McDuffie, the president of the company, did not employ counsel and contest Griffith's right to recover such salary, is no evidence that a conspiracy existed between Griffith and McDuffie to pay such salary. If the company owed the salary, it would have been a useless thing to contest its recovery; and the president no doubt acted wisely in permitting judgment to be obtained at as little expense as possible.

It is also argued by counsel for appellants that in allowing the salary due Griffith under the resolution, the board of directors incurred an expense in excess of the limitation fixed by the by-laws of the company. The by-law reads as follows:

"That no indebtedness over one thousand dollars shall be incurred by the company."

The resolution authorizing the payment of fifty dollars per month as salary was not a violation of this provision of the by-laws. The allowance under such resolution was fifty dollars per month and did not extend or cover any definite period of time. The fact that Griffith afterward made claim to the corporation for the aggregate amount of salary unpaid, which was allowed by the corporation, did not violate this provision of the by-law, for the reason that the indebtedness was incurred in monthly sums of $50 each and was not incurred at the time such bill was allowed, as the allowance of the claim of Griffith was inconsequential in so far as Griffith's right to recover his salary was concerned.

We have carefully examined the evidence in this case and are unable to discover any evidence of a conspiracy or any

evidence of fraud on the part of Griffith, McDuffie or Herzinger, either in the annual election of directors or in the obtaining of judgment against the company by Griffith or Casady. We find no error in the record. The judgment is *affirmed.* Costs awarded to *respondents.*

Sullivan, C. J., and Ailshie, J., concur.