[Civil No. 1124.    Filed April 2, 1910.]

[108 Pac. 461.]

.W. S. TEVIS, W. M. McKITTRICK and THE PACIFIC
SURETY COMPANY, Defendants and Appellants, v.
JEPP RYAN, T. C. RYAN and E. B. RYAN, Plaintiffs
and Appellees.

1. CONTRACTS—CONSTRUCTION—WORDS.—In determining the meaning of
a word in a contract, it should not be separated from its context,
nor considered apart from other provisions which may throw light
upon its meaning, but the contract should be viewed as an entirety.

2. SAME—SAME—PARTICULAR WORDS—"REINVEST."—A corporation was
involved financially, its property having been sold under execution,
and the time for redemption being about to expire.   Plaintiffs owned
four-sevenths of the capital stock, and defendants three-sevenths.
To give defendants a controlling interest, the parties contracted that
plaintiffs should transfer their interest to defendants, with the ex-
ception of 279,500 shares, which were to be retained, defendants to
have two years in which to comply with the contract, and should they
fail to so comply, the "interest" of plaintiffs should reinvest in them
in the same proportion as they held and were possessed of at the
signing of the agreement.   *Held,* that upon default of defendants,
in view of the fact that the word "reinvest" implies a previous
divestiture and the use of the phrase "in the same proportion and
ratio as they were held and possessed of," whereas plaintiffs never
had possession of the corporate property as such, plaintiffs were en-
titled to recover their interest conveyed in the stock only, and not
in the property of the corporation.

3. SAME—BREACH—DAMAGES—PROXIMATE AND REMOTE CONSEQUENCES.
The proximate damage resulting from breach of the contract was
the loss of the value of the stock to be returned, and, plaintiffs hav-
ing retained 279,500 shares of their four-sevenths interest, loss in
value of such shares was a remote and indirect result of the breach,
not such as the other parties must have contemplated; and plaintiffs'
measure of damages for breach of the contract was the loss of value
only of the stock to be returned.

4. EVIDENCE—VALUE OF CORPORATE STOCK.—In the absence of any other
evidence of value, the par value is presumptively the value of cor-
porate stock, but evidence of the insolvency of the corporation, the
value of its property, and its liabilities, is admissible to show the
value of its stock.

5. APPEAL AND ERROR—REVIEW—RIGHT RESULT BY WRONG METHOD.—
Where the result is right, though the method of reaching it is wrong,
and though the jury may have found their verdict on an incorrect

theory of the case, the error is harmless, and the judgment will not be reversed.

6. SAME—REVIEW—CONSTRUCTION OF PLEADING.—Where the construction placed upon a complaint by the trial court accords with the evidence introduced and the instructions given, the supreme court will adopt such construction.

7. SAME—RESERVATION IN LOWER COURT OF GROUNDS OF REVIEW—NEW THEORY ON APPEAL.—A party cannot on appeal abandon the theory of the case to which he has assented upon the trial and substitute another.

8. EVIDENCE — ADMISSIONS OF COUNSEL — EFFECT.—On trial, as bearing upon the issue involved, admissions of counsel may be the ground of the court's procedure equally as if established by clearest proof, but mere unguarded expressions of counsel or ambiguous statements may not be the basis of the court's action.

9. TRIAL—ADMISSIONS OF COUNSEL—CONSTRUCTION.—In an action for breach of contract, whereby plaintiffs conveyed their four-sevenths interest in a corporation less an amount of stock retained, statements of defendants' counsel that the suit was simply to recover the value of four-sevenths of the stock of the corporation, and not the value of the stock retained, were merely an admission of counsel's view of the theory of plaintiffs' claim as set forth in their complaint, and not an admission of the theory or fact that, if plaintiffs were entitled to damages, the extent thereof should be the value of four-sevenths of the capital stock.

10. APPEAL AND ERROR—DISPOSITION OF CAUSE—AFFIRMANCE UPON CONDITION OF REMITTITUR.—Where the evidence and the verdict afford the supreme court a basis for the computation of the correct sum to be awarded plaintiffs, but an excessive amount has been allowed, the supreme court may render judgment for plaintiff on condition that *remittitur* be made under Civil Code of 1901, paragraph 1588, providing that, if a judgment be for excessive damages, and is removed to the supreme court, the successful party may remit the excess, and judgment may be rendered for the proper amount.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for Maricopa County. Edward Kent, Judge. Affirmed on condition that a *remittitur* be made.

The facts are stated in the opinion.

Ben Goodrich, A. C. Baker and Chas. Bowman, for Appellants.

The written contract is complete, unambiguous and definite, and requires no parol evidence to explain it, that no interest in the property or mines of the corporation is comprehended

or covered by the contract or within its terms or stipulations. The law controlling the operation of a contract is deemed to be within the contemplation of the parties, as much as the words in which it is expressed, and becomes an essential part of it. *Union Selling Co.* v. *Jones,* 128 Fed. 672, 63 C. C. A. 224; *Walker* v. *Whitehead,* 16 Wall. (U. S.) 314, 317, 21 L. Ed. 357; *Bulkley* v. *United States,* 19 Wall. (U. S.) 37, 40, 22 L. Ed. 62; *Manistee Iron Works* v. *Lumber Co.,* 92 Wis. 28, 65 N. W. 865. The intention of the contracting parties is to control. *Canal Co.* v. *Hill,* 15 Wall. (U. S.) 94, 21 L. Ed. 64; *Pressed Steel Car Co.* v. *Eastern R. Co.,* 121 Fed. 609, 57 C. C. A. 635; 2 Page on Contracts, par. 1104. And this intention must be deduced from the entire agreement. The law controlling the operation of a contract is an essential part of it. Where a contract is susceptible to two constructions, one of which makes the contract equitable and reasonable and the other unconscionable and unreasonable, the former will be adopted. *Scott* v. *United States,* 12 Wall. (U. S.) 443, 20 L. Ed. 438; *Hume* v. *United States,* 132 U. S. 406, 10 Sup. Ct. 134, 33 L. Ed. 393. The court erred in the admission of parol evidence which contradicted, varied, altered and added to the written contract. "The rule that a written contract cannot be varied by parol extends to the legal import or intendment of the contract, as well as to the terms or words in which it is written." *Union Selling Co.* v. *Jones,* 128 Fed. 677, 63 C. C. A. 224; *Bast* v. *Bank,* 101 U. S. 93, 25 L. Ed. 794. "Where there is a contract appearing on its face to be complete, with mutual obligations to be performed, you can no more add to or contradict its legal effect by parol stipulations, preceding or accompanying its execution, than you can alter it, through the same means, in any other respect." *Thomas* v. *Scutt,* 127 N. Y. 133, 27 N. E. 961. "When the language employed in a contract is not free from ambiguity, or when its interpretation depends upon the sense in which the words are used in view of the subject to which they relate, the relation of the parties and the surrounding circumstances properly applicable to it, the intent of the parties becomes a matter of inquiry, and the interpretation of the language used is a mixed question of law and fact, to be determined by the jury" (*Norton* v. *Shields,* 132 Fed. 873); and should be submitted to the jury under proper

instructions from the court. *Coquillard* v. *Hovey,* 23 Neb. 622, 8 Am. St. Rep. 134, 37 N. W. 479; *Milwaukee Ry. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256.

Neal & Sutter, J. T. Kingsbury and Eugene S. Ives, for Appellees.

The evidence objected to was offered and received, not for the purpose of varying the terms of the contract, but for the purpose of showing the circumstances surrounding its making, in order to aid the court in its interpretation. "When an instrument has been correctly construed according to its terms, it is harmless error to admit incompetent testimony to show its interpretation." *Taylor* v. *Hodges,* 105 N. C. 344, 11 S. E. 156. It is the duty of the court, and not of the jury, to interpret a contract. "The court decided to hear oral testimony from the parties to the transaction, so as to put the court in the position of said parties at the time the transfers were made; not for the purpose of reading into those assignments or contracts any new conditions, or varying or changing their meaning, but for the purpose of ascertaining what the parties themselves meant by the terms used in the written bills of sale executed." *Chicago Cheese Co.* v. *Fogg,* 53 Fed. 73. "It is well-settled law that written instruments are always to be construed by the court, except when they contain technical terms or terms of art, or when the instrument is introduced in evidence collaterally, or where its effect depends not merely upon the construction and meaning of the instrument, but upon extrinsic facts and circumstances, in which case the inference to be drawn from it must be left to the jury." *Goddard* v. *Foster,* 17 Wall. (N. Y.) 123, 21 L. Ed. 589.

LEWIS, J.—This is an action brought to recover damages for breach of contract. The facts in so far as essential to determination of the case are as follows:

In November, 1902, the Turquoise Copper Mining and Smelting Company, a corporation, was the owner of certain mining claims in Cochise county, Arizona. At that time its property had been sold for approximately $23,000, upon an execution in aid of a judgment, to one T. B. McPherson. The time for redemption was to expire January 31, 1903. Upon November 29, 1902, a conference was held between W.

H. McKittrick, one of the appellants, and the appellees, which resulted in the execution of an agreement between the appellants and the appellees, the alleged breach of which is the subject matter in suit. This agreement may be summarized thus:

Whereas, the parties above mentioned represent all the stock in the Turquoise Copper Mining and Smelting Company, a corporation; and, whereas the first parties (the appellants) now own and control three-sevenths of the capital stock of said corporation, and parties of the second part (the appellees) four-sevenths of the capital stock thereof, and whereas the first parties are desirous of securing the controlling interest of the said capital stock of said corporation, and thereby obtaining the full management of the affairs of the said corporation: Now, therefore, in consideration of the conversion of the capital stock from its original capitalization to one million shares of the par value of one dollar ($1) each and the placing of 240,000 shares of said capital stock in the treasury of the company to be sold in whole or in part by the said first parties at such price or prices as the board of directors of said corporation may deem advisable, the moneys to be used first to pay off a certain judgment held by T. B. McPherson, and second to develop the claims of the company, the second parties agree that the officers of the company now representing the second parties shall resign, permitting the first parties to choose officers as they may desire. Said second parties further agree to give the first parties as their interest in the company 280,500 shares of the capital stock; the second parties to receive 279,500 shares, the remaining 200,000 shares to be issued to W. H. McKittrick, as trustee, and to be divided between the parties in the proportion of 101,000 to the first parties and 99,000 shares to the second parties. All of the parties agree to use their best endeavors to sell the trust stock at not less than par, the proceeds to be divided *pro rata* until reimbursed for the money then expended upon the property, when the remaining shares shall be divided between them according to their respective interests in the ratio aforesaid. It is further agreed that none of the individual holdings shall be sold until the trust stock has been sold or apportioned, and that the second parties shall not be liable for any expense con-

nected with the operation of the company, excepting the expense of selling the trust stock.

The contract then concludes: "It is further agreed that the parties of the first part shall have a term of two years in which to comply with all the requirements of this contract. Should they fail or refuse to comply with all the agreements and stipulations herein mentioned within the period aforesaid, then this agreement shall become null and void and of no effect, otherwise to remain in full force and effect. Should this contract be annulled by any failure of the parties of the first part to do any and all things herein required of them, then the interest of the second parties shall reinvest in them in the same proportion and ratio as they held and were possessed of at the signing of this agreement." This clause has been denominated by counsel as the "reinvestment clause," and for convenience will be so referred to hereinafter.

Pursuant to the terms of this contract, the appellees resigned from the management. The appellants thereupon assumed control, and selected directors and officers. The articles of incorporation were amended, changing the capital stock from 100,000 shares at $10 each to 1,000,000 shares at $1 each. The old certificates of stock were surrendered, canceled, and new certificates issued, the appellees receiving and ever since holding 279,500 shares. The reorganization of the company was not effected until January 26, 1903, and in order to obtain the necessary funds with which to redeem from the sale to McPherson, the corporation borrowed $30,000 upon its note from W. S. Tevis, one of the appellants. This note was subsequently transferred to the Western company. McKittrick, acting for the corporation, redeemed the mines from the sheriff's sale to McPherson. Thereafter 32,000 shares of the treasury stock were sold for twenty-five cents a share, netting the corporation $8,000, which funds were used by the corporation for further development of the mines. The interest upon the $30,000 note in the hands of the Western company was met by additional funds borrowed from Tevis, for which notes were given, and these notes transferred to the Western company. On May 16, 1904, the balance of the treasury stock, 208,000 shares, was sold for three-fourths of a cent a share. Sometime subsequent to November 29, 1904, an action was commenced by the Western company in Kern county, Califor-

nia, to recover upon the promissory notes given by the corporation, and upon May 24, 1905, judgment was by it obtained for $44,078.05. The evidence tends to show that, prior to the obtaining of such judgment, a demand was made upon the appellants by the appellees to be reinvested with their interests in the property. This demand was ignored by the appellants. Shortly thereafter an action was commenced upon the judgment of the Western company in Cochise county, in which judgment was rendered against the Turquoise company for $44,549.43 upon July 20, 1905. At the same time W. H. McKittrick obtained a judgment against the corporation in Cochise county for $9,975 for services rendered to the corporation as general manager. This judgment was transferred to the Western company. On August 12, 1905, the sheriff of Cochise county sold the properties of the corporation on an execution issued upon the Western company's judgment to the judgment creditor, and, the property not being redeemed, on July 11, 1906, a sheriff's deed conveying the property to the Western company was issued. On July 20, 1908, the Western company deeded the properties to the Tejon Mining Company, incorporated by the appellants. A written demand, the date of which does not appear, was made upon the appellants by the appellees some time after the issuance of the sheriff's deed to the Western company. Thereafter the appellees filed suit in the court below to recover damages arising from the refusal of appellants to reinvest them with a four-sevenths interest in the property, in the sum of $200,000. The case was tried to a jury, and a verdict returned in favor of the appellees. Judgment was entered on the verdict against the appellants Tevis and McKittrick in the sum of $132,000, and also against the Pacific Surety Company, surety for the appellants upon a bond theretofore given in said cause, for the sum of $104,000. Motion for new trial was made, which motion was denied, and thereupon this appeal was taken and perfected.

The principal question is as to the correctness of the instruction of the trial court as to the measure of damages: ''You shall ascertain the value of the property at the time that the plaintiffs demanded that defendants reinvest them with their interests therein. You should deduct therefrom the amount of the claim of the Western company with interest, to wit,

$39,000, and then award the plaintiffs four-sevenths of the balance remaining.'' The true measure of damages is dependent upon the interpretation of the words in the contract contained in the reinvestment clause: ''The interest of the second parties shall reinvest in them in the same proportion and ratio as they held and were possessed of at the signing of this agreement.'' Counsel for appellants argue that the word ''interest'' necessarily means stock, and could not under any circumstances mean property. Counsel for appellees urge that the word ''interest'' is more comprehensive than ''stock''; that the ownership of an interest may or not be ownership of stock, and that the meaning to be attached to it must depend entirely upon the conditions prevailing at the time when it became the duty of Tevis and McKittrick to reinvest the Ryans. In interpreting the word ''interest,'' we should not separate it from its context, nor should we consider it apart from other provisions which may throw light upon its meaning. We are called to view this contract as an entirety, and determine from the internal evidence it affords the meaning to be attached to the word. *O'Brien* v. *Miller,* 168 U. S. 287–297, 18 Sup. Ct. 140, 42 L. Ed. 469; *Pressed Steel Car Co.* v. *Eastern Ry. Co.,* 121 Fed. 609, 57 C. C. A. 635.

Reviewing the contract, we find the parties represent all of the capital stock; the parties of the first part (appellants) own and control three-sevenths of the capital stock; the parties of the second part (appellees) four-sevenths of the capital stock; the parties of the second part are desirous of securing the controlling interest of the said capital stock; the appellees give to the appellants part of their stock holdings upon certain conditions and agreements to be by them performed, and it concludes: ''Should this contract be annulled by any failure of the parties of the first part to do any and all things herein required of them, then the interest of the second parties shall reinvest in them in the same proportion and ratio as they held and were possessed of at the signing of this agreement.'' To give the word ''interest '' the meaning of interest in property in preference to interest in the capital stock is to deprive the word ''reinvest'' of force, for it implies a previous divestiture. It is to destroy the significance of the concluding clause ''in the same proportion and ratio as they held and were possessed of,'' for there was never a holding or posses-

sion by them of the property of the corporation as such. We
give a proper legal meaning to the word ''interest'' by inter-
preting it as interest in the capital stock. If the word be used
in a sense less accurate, we must still deem it to be used in
its proper legal sense, unless such interpretation as tested by
the specific circumstances under which it is used would result
in the absurdity of rendering it unmeaning. In that case by
construction it would be proper to place upon it the less ac-
curate meaning evidently intended by the parties, as shown
by the circumstances giving rise to its use. The circumstances
in evidence under which the contract was executed may be
briefly stated. The corporation was involved financially; its
property had been sold under execution; the time for redemp-
tion was about to expire; the purchaser under the execution
sale was taking his certificate of sale in trust for the holders
of the majority of the stock of the corporation. A corporate
meeting was being held. The holders of the minority interest
in the capital stock accused the holders of the majority in-
terest of an attempt to ''freeze them out.'' This was denied,
and as evidence of good faith the majority interest entered
into this agreement. Applying the language of the contract
to the situation as it then existed, its construction is the same
as the interpretation heretofore given.

The contract contemplated selling stock of the corporation
to the public. It would have been impossible for the appel-
lants, acting in good faith with the stockholders so secured,
to have, upon the failure of their plans, devested the corpora-
tion of the title to the mines and invested appellees with a
four-sevenths interest therein. To hold that the contract re-
quired a return of a four-sevenths interest in the property
would call for the assumption that the parties had it in mind,
if the scheme failed, that the appellants would invest the ap-
pellees with title to a four-sevenths interest in the property
as against a corporation of which they were majority stock-
holders, as well as directors and officers. This would contem-
plate placing the appellants in a position where their pecu-
niary interest would clash with their duties. The reasoning
of the cases which hold that all agreements for pecuniary con-
sideration to control or influence the conduct of directors,
stockholders, or agents of corporations charged with duties of
a fiduciary character to private parties are against the true

policy of the state, which is to secure fidelity in the discharge
of such duties, is applicable. *Woodstock Iron Co.* v. *Rich-
mond & Danville Extension Co.,* 129 U. S. 643, 9 Sup. Ct.
402, 32 L. Ed. 819. We, therefore, refuse to adopt a con-
struction which would tend in any wise to so influence the
action of the appellants in their fiduciary relation, where we
have the reasonable alternative of so construing the contract
as to enable the appellants to act free from such malign in-
fluence. Nor in reaching this conclusion have we lost sight
of the further contention of the appellees that, even though
the word "interest" be not construed to mean "property,"
it should be construed to include a restoration to the appellees
of the management and control of the corporation. The plac-
ing of this meaning upon the word "interest" is inconsistent
with the distinction which the parties themselves have made
in the contract itself, wherein the appellees agree "that the
officers of said corporation representing their interests" should
resign and allow the appellants to select such officers as they
may desire. The holding of office is not identified with in-
terest, but is clearly distinguished therefrom.

The appellants contend that the trial court, by adopting
the measure of damages at a four-sevenths interest in the
property of the corporation, construed the reinvestment clause
to extend to the property or the mines of the corporation.
Such result does not necessarily follow. There are various
tests for determining the value of stock in a corporation. In
the absence of any other evidence of value, the par value is
presumptively the value of the stock. *Appeal of Harris*
(Pa.), 12 Atl. 753; *Brinkerhoff* v. *Savings Bank,* 118 Mo. 447,
24 S. W. 129. In this case, however, evidence was introduced
tending to show the insolvency of the corporation, the value
of its property, and its liabilities. This evidence may be prop-
erly looked to for the purpose of determining the value of
the stock of the corporation. "There is no better or safer
criterion to determine the value of stock of an insolvent cor-
poration than a comparison of the value of its assets with the
amount of its liabilities." *Nelson* v. *First Nat. Bank,* 69 Fed.
798, 16 C. C. A. 425. The instruction of the trial court is
tantamount to an instruction that the appellees were entitled
to the value of four-sevenths of the capital stock of the com-

XIII Ariz.—9

pany, which was the equivalent of and was to be ascertained by determining from the evidence the value of four-sevenths of the net assets of the corporation. That this was the meaning of the trial court appears clear from reading the oral instructions, wherein frequent reference is made to the duty of appellants to reinvest appellees with their interest in the company. When the result is right, though the method of reaching it is wrong, and though the jury may have found their verdict on an incorrect theory of the case, the error is harmless, and the judgment will not be reversed. *Decatur Bank* v. *St. Louis Bank,* 88 U. S. 294, 22 L. Ed. 560; *Chicago etc. Ry. Co.* v. *Ross,* 112 U. S. 377, 5 Sup. Ct. 184, 28 L. Ed. 787; *Dry Goods Co.* v. *Malcolm,* 58 Fed. 670, 7 C. C. A. 426, 19 U. S. App. 229.

It is urged, however, that there is manifest error in this instruction as so construed, for the reason that the complaint does not allege that the plaintiffs have been deprived of their four-sevenths interest in the capital stock of the Turquoise company, but that the plaintiffs have been defrauded of their four-sevenths interest in the property of the said company. We find no difficulty in this. A reading of the entire third cause of action in the complaint upon which the case was tried makes it clear that the appellants have defined their interest in the property to be a four-sevenths interest in the capital stock of the company. This is the fair and reasonable intendment of the pleading. It is the construction evidently placed upon it by the trial court. It accords with the evidence introduced and the instruction given. We, therefore, adopt such construction. *Phillips* v. *Smith,* 11 Ariz. 309, 95 Pac. 91.

Another and more serious question as to the true measure of damages arises upon the evidence showing that, at the time of the alleged breach, May, 1905, the plaintiffs were in the possession of 279,500 shares, which had been retained by them under the terms of the contract. We have already held that the sole breach consisted in the failure to reinvest the Ryans with their former interest, namely four-sevenths of the capital stock. Was the measure of damages fixed by the court erroneous in not eliminating from the instruction given the 279,500 shares so held by the Ryans? The appellees' reply to this question is twofold:

First. That the avowals by counsel concerning the theory upon which the case was tried precludes them from objecting now to the court's instruction in accordance with such avowal and theory. This avowal occurred at the threshold of the trial upon an objection to proffered testimony as to the amounts advanced by the respective parties for the benefit of the properties, and was elicited by the suggestion of the court that in its opinion it was competent under the pleadings to show the interest these people had in the property. Counsel for appellants, in further urging the objection to this evidence, stated: "This suit is simply for the purpose of recovering the value of four-sevenths of the stock of the corporation. There is nothing said about $160,000. The Court: It is referred to in the complaint. Counsel: But this action is not to recover any part of that [the $160,000]. The damage is simply as to the value of four-sevenths of the stock only." There is an abundance of authority, and it is a familiar rule of appellate practice, that a party will not be permitted on appeal to abandon the theory of a case to which he has assented upon the trial and substitute another. The reason of the rule is to be found in the injustice of permitting a case, tried and determined on assumptions adopted and acquiesced in as proper by both parties and followed by the court, to be retried upon appeal without regard thereto. In the trial of a cause, the admissions of counsel are constantly received and acted upon. In fact, as bearing upon the issue involved, admissions of counsel may be the ground of the court's procedure equally as if established by the clearest proof. Of course, nothing should be taken against the party making the statement or admission when made, without full consideration. Mere unguarded expressions of counsel, or ambiguous statements, should never be the basis of the court's action. Otherwise this salutary rule would become a medium of injustice. There is a marked difference between the theory of a case and the extent of recovery to be allowed under a given theory. While it is true that the court subsequently indicated an adoption of the value of the stock as the measure of damages, nowhere, after a careful examination of the record, do we find a concession by the appellants that, if the appellees are entitled to damages, they are entitled to such damages to the extent of the value of four-sevenths of the

capital stock. There is naturally but little in the record with reference to the stock retained by the Ryans. It is conceded that it was so retained. We do find, however, cross-examination of Jepp Ryan tending to show that the stock was still owned by the Ryans, and that it has been deposited as collateral for loans obtained by them. A fair interpretation of counsel's language is that it is an admission of his view of the theory of appellees' claim as set forth in their complaint. It is not, however, reasonably to be construed as an admission of the theory or fact that, if they were entitled to damages, the extent of such damage was the value of four-sevenths of the capital stock. We, therefore, hold that there is no such admission as to the measure of damages as would preclude the appellants from questioning here the instruction given.

Second. The appellees further urge that the trial court was correct, because the appellants deliberately refused to fulfill their contractual obligation, and wrongfully continued to control and manage the property, and as a result thereof the assets of the corporation were wholly lost and the value of the entire stock destroyed. They say it does not lie in the mouth of the appellants to assert that, if they had passed the control to the Ryans, the same loss would have occurred. They rely upon the principle that where a party has breached a contract, he will not be permitted, in the action to recover damages therefor, to defend upon the ground that the party would not, or could not, have availed himself of the contract, and cite the cases of *Hampton Stave Co.* v. *Gardner,* 154 Fed. 805, 83 C. C. A. 521, and *Griggs* v. *Day,* 158 N. Y. 1, 52 N. E. 697, 698. This contention, however, is based upon a premise which has already been eliminated. There was no duty upon the part of the appellants to restore to the appellees the management and control of the corporation, except in so far as a right to management and control would flow from a restoration to them of a majority of the capital stock, and there is no showing that a corporation election would have been held in the interval between the breach and the loss of the assets.

But, assuming that the right to control and manage the corporation would flow from a reinvestment of the appellees with such majority of the capital stock, and that such election might have been held, the principle applied in the cases cited has no application here. A consideration of one will distin-

guish the line of cases cited. In the case of *Hampton Stave Co.* v. *Gardner, supra,* the stave company broke a contract wherein they had agreed to sell Gardner certain land. Gardner sued to recover damages in the amount of the difference between the purchase price and the value of the property at the time of the breach. Judgment was recovered by Gardner. It was contended by the vendor that Gardner would not have taken and paid for the land if the contract had been fulfilled. The court refused to admit evidence offered by the vendor to this effect, and says: "But that evidence was immaterial. What the parties would have done if the vendor had not violated its agreement was a speculative and irrelevant issue. It had committed the first breach of the contract, and had thereby given the vendee the right to recover the legal damages which resulted from its. wrong. . . . The measure of damages for its breach of this covenant in the contract was the natural and probable loss which the vendee would sustain on account of that breach, and that was the value of the option, the difference between the value and the contract price of the land, and the vendor could not lawfully take advantage of its own wrong, with proof that the vendee would not have realized this value if it had performed its covenant.'' This statement of the court is correct, and had the appellants in the case at bar sought to prove that, if they had returned this stock, the appellees would not have assumed control, but would have permitted the property to be lost, as it was lost, such evidence would have been immaterial, and would properly have been rejected by the trial court. This they did not seek to do.

The appellants' contention is that they are only answerable under the pleadings in this action for the value of the stock withheld by them; the direct and proximate damage resulting from their breach of the contract. The proximate damage resulting from the breach of this contract was the loss of the value of the stock to be returned. This was contemplated by the contract, and appellants should answer therefor. The loss of the value of the 279,500 shares of stock was a remote and indirect result of the breach, and not such as the appellants must have had in contemplation, at the time of the execution of the contract, as the probable result of such breach. *Globe Refining Co.* v. *Landa Cotton Oil Co.,* 190 U. S. 540–544, 23 Sup. Ct. 754, 47 L. Ed. 1171. It cannot be said that the mere

retention of the stock by the appellants in and of itself caused the loss of the assets of the corporation. The loss of the assets of the corporation was due, not to the breach of the contract, but to independent acts of the appellants subsequent to such breach. The court was in error in instructing the jury so as to permit a recovery of this remote damage. We do not hold, nor is it to be implied, that the appellees have no remedy for such loss, but such remedy is not to be found in the case as now before us.

The remaining questions presented by the assignments of error do not require a reversal of the judgment of the trial court. The sole error found to exist consists in the instruction permitting the jury to find a larger amount of damages than was warranted. The evidence and the verdict of the jury affords us a basis for the computation of the correct sum to be awarded appellees. The jury by its verdict found, in effect, that the value of the entire capital stock of 1,000,000 shares of the Turquoise Copper Mining and Smelting Company, at the time of the breach of the contract, was $231,000. We have held that the appellees were entitled to recover the value of four-sevenths of this stock less the 279,500 shares retained by them, namely, the value of 291,928 shares, which, being computed upon the basis afforded by the verdict of the jury, is $67,435.37. Under the provisions of paragraph 1588 of the Revised Statutes of 1901, and the practice approved in *Kennon* v. *Gilmer*, 131 U. S. 22, 9 Sup. Ct. 696, 33 L. Ed. 110, it is therefore ordered that should the appellees elect to file a *remittitur* in this court within twenty days hereafter, in the amount of $64,564.63, judgment shall be entered in this court in favor of the appellees and against the appellants and the sureties upon the bond on appeal, and against the Pacific Surety Company, surety upon the bond given in the court below, in the sum of $67,435.37, with costs in the trial court, and that the costs of this appeal be awarded to the appellants; otherwise let the judgment be reversed, and the cause be remanded for a new trial.

CAMPBELL and DOE, JJ., concur. DOAN, J., not sitting.