GILLIES, RESPONDENT, *v.* ROBERT E. LEE MINING CO., APPELLANT.

(No. 6,064.)

(Submitted February 14, 1927.   Decided March 4, 1927.)

[254 Pac. 422.]

*Corporations—Stock—Directors—Refusal to Make Transfer on Books—Conversion—Value—Instructions—Estoppel.*

Corporations—Refusal to Make Transfer of Stock on Books—Conversion—Complaint—Sufficiency.

1. Complaint in an action against a corporation to recover damages as for a conversion of stock by reason of its refusal to make transfer thereof on its books, *held* not open to the objection that damages were alleged in the alternative, *i. e.*, that its refusal rendered the stock valueless, and that on account thereof plaintiff was deprived of participation in stockholders' meetings and in the profits, to her damage, *etc.;* the trial having been had on the theory that the action was for the value of the stock only, and not for special damages, appellant was not in a position to complain.

Same—Refusal to Transfer Stock on Books Constitutes Conversion.

2. Where corporate officers wrongfully refuse to transfer stock on the books of the corporation at the request of an assignee thereof, its refusal constitutes a conversion of the stock and he may sue for the recovery of its value.

Same—Directors—Qualifications—Stockholders—Right to Vote at Election of Directors.

3. To render one eligible to the office of a director of a private corporation, his name must, under section 5933, Revised Codes of 1921, appear on its books as one of its stockholders, and, under section 5946, if his name does not so appear thereon ten days prior to an election of directors, he cannot vote at such election.

Same—Conversion of Stock—Estoppel.

4. The mere fact that the assignee of a block of corporate stock who had been elected a director though stock held by her had never been. transferred to her on the books of the corporation (par. 3, above) and who therefore was a mere *de facto* and not a *de jure* director, attended as such one directors' meeting but was not shown by the record to have participated in the transaction of business, did not, under the doctrine of estoppel, bar her from thereafter maintaining an action against the corporation to recover damages for the conversion of her stock based upon its refusal to make transfer thereof on its books.

Same—Conversion of Stock—Value—Instruction.

5. An instruction in an action for the conversion of corporate stock that prima facie the value of such stock is its par value,

2.   See 26 R. C. L. 1105.
3.   See 7 R. C. L. 425.

but that its value may be shown to be either more or less than par; that if it had a definite market price, the jury could consider it, and if not subject to market quotations, evidence of the value of the assets of the corporation over and above its liabilities and the proportional amount of such assets which the stock held by plaintiff bears to the entire capital stock of the corporation, might be taken into consideration, *held* correct.

Trial—Instruction—Use of Words "Prima Facie" not Objectionable.

6. Use of the Latin words "prima facie" in an instruction *held* not objectionable, the words having been adopted into the English language and being in ordinary use the meaning of which must be presumed to be understood by a jury of intelligent men.

Corporations—Assignment of Stock by Nonresident—Refusal to Transfer on Books—Conversion—What not Defense—Instruction.

7. An instruction that under section 5956, Revised Codes of 1921, corporate officers requested by the assignee of stock to transfer it on the books of the corporation could require no other affidavit as a condition to making transfer, where the assignor was a nonresident, than that the latter was living at the time he made assignment, and that failure to furnish others was not a defense to an action in conversion, *held* correct, and that the addition of the words that it was for the jury and not for the officers to decide what was or was not a compliance with the statute did not render it prejudicially erroneous.

[1]    Corporations, 14 C. J., sec. 1169, p. 769, n. 2.
[2].    Corporations, 14 C. J., sec. 1165, p. 765, n. 59.
[3]    Corporations, 14 C. J., sec. 1386, p. 899, n. 42; p. 900, n. 46; 14a C. J., sec. 1829, p. 68, n. 99.
[4]    Corporations, 14 C. J., sec. 1164, p. 764, n. 45 New; 14a C. J., sec. 1840, p. 80, n. 21, 23.
[5]    Corporations, 14 C. J., sec. 1173, p. 771, n. 48; p. 772, n. 54.
[6].    Trial, 38 Cyc., p. 1595, n. 99; p. 1598, n. 18.
[7]    Corporations, 14 C. J., sec. 1158, p. 758, n. 38; sec. 1164, p. 764, n. 45 New; sec. 1165, p. 765, n. 59.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by Edna B. Gillies against the Robert E. Lee Mining Company. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. .P. E. Geagan,* for Appellant, submitted a brief and argued the cause orally.

*Mr. E. B. Howell* and *Mr. William Meyer,* for Respondent, submitted a brief; *Mr. Meyer* argued the cause orally.

6. See 14 R. C. L. 772.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

During the first days of September, 1925, Edna B. Gillies was the owner of 20,190 shares of the capital stock of the Robert E. Lee Mining Company. There were four certificates of 5,047½ shares each, issued to Manfred Reinhart, executor, who assigned them severally to Vera C. Thurston, formerly Vera C. Reinhart, Allan Reinhart, Milton Reinhart and Edgar Reinhart. These people, except Edgar Reinhart, assigned their respective certificates in blank; Edgar Reinhart assigned his to plaintiff. Two of these certificates were purchased by plaintiff and two by her mother some time in 1918. Shortly after the purchase the officers of the Robert E. Lee Mining Company received actual knowledge of the fact. The stock never was transferred on the books of the company. The property of the company consisted of the Robert E. Lee mining claim. The company was inactive and during the entire period of this controversy no work of any kind was done upon the mining claim.

In January, 1925, there was a meeting of the stockholders of the company which plaintiff did not attend but her mother was present. At this meeting the plaintiff was named a director of the company and when the directors met John A. Cannon was elected president, the plaintiff vice-president and J. Chauvin secretary. In the forepart of the year 1925 a special meeting of the directors was called to meet at the office of Mr. Chauvin. It does not appear that any business was transacted at the meeting but upon that occasion Mr. Chauvin told plaintiff and her mother that an attractive proposition had been made to the company which was, in short, that the owners of the Butte West Side Mines Company, which owned a mining claim known as the Minnie Jane, adjoining the Robert E. Lee, were desirous of obtaining the stock of the Robert E. Lee Mining Company. The proposition was that the stockholders of

the Robert E. Lee Mining Company exchange their stock, share for share, for stock in the Butte West Side Mines Company. Plaintiff's mother said she thought they, referring to herself and daughter, should consult an attorney. Mr. Cannon said: "Oh, no, now is the time to let attorneys alone; they will get your money," and plaintiff's mother rejoined: "Yes, there are other people who will get our money as well as attorneys; I would just as soon see an attorney get it as give it to McC. White,"—Mr. White seems to have been the controlling factor in the Butte West Side Mines Company. From this time on plaintiff and her mother frequently were urged to agree to the trade proposed, but they refused to accede.

The evidence on part of plaintiff shows that about September 4, 1925, the plaintiff, who then was the owner of the 20,190 shares, in company with her mother and her attorney, Mr. Meyer, called upon Mr. Chauvin, secretary of the company, presented the certificates and asked that the stock be transferred upon the books of the company to her, plaintiff. In response to this request Mr. Chauvin said: "Well, I don't know whether we will transfer them or not." Mr. Meyer: "Well, is there any reason why?" Mr. Chauvin: "Well, Miss Gillies is making us a lot of trouble." Mr. Meyer: "That has nothing to do with her right to have the certificates transferred." Mr. Chauvin: "Well, anyhow, I haven't the stock book here. I will have to see Mr. McC. White about it." Mr. Meyer: "What has he to do with it; he isn't an officer of the company, is he?" Mr. Chauvin: "Well, all the books are in his office." Mr. Meyer: "Well, aren't you the secretary?" Mr. Chauvin: "Yes." Mr. Meyer: "Why is it that the books are not in your office?" Mr. Chauvin: "We have taken all the books and all the papers and everything over to McC. White's office. I will have to see him about the matter." Mr. Meyer: (Handing the certificates to Mr. Chauvin.) "I want to make a demand, Mr. Chauvin, that you transfer these certificates."

Mr. Chauvin: "Well, I will not do anything without seeing McC. White."

Some conversation then took place in which it was said that the plaintiff did not want to exchange her stock in the Robert E. Lee Mining Company for stock in the Butte West Side Mines Company. Mr. Chauvin then said he would let Mr. Meyer know in the afternoon whether the certificates would be transferred upon the books of the company. In the afternoon Mr. Meyer returned to the office of Mr. Chauvin and this took place: Mr. Meyer: "Well, what did you decide to do?" Mr. Chauvin: "Well, our attorney advises us that we do not have to transfer, and as long as Miss Gillies is making us trouble, there is no reason why we should favor her. We won't transfer it." Mr. Meyer: "Is that the only reason?" Mr. Chauvin: "Well, we don't know that that is Manfred's signature. If you will get an affidavit from somebody that that is his signature we might decide to." Mr. Meyer: "Well, you have been recognizing it as his signature right along, haven't you?" Mr. Chauvin: "Yes, but Miss Gillies is making us trouble now and there is no reason why we should favor her." Mr. Meyer asked if Miss Gillies' affidavit would not do, to which Mr. Chauvin replied: "No, we must get somebody from California who knew Manfred Reinhart." As a matter of fact, as the record shows, Miss Gillies was well acquainted with the signatures of Vera C. Thurston, Allan Reinhart, Milton Reinhart and Edgar Reinhart, and was in all respects competent to testify concerning the genuineness of the signatures upon the certificates.

That same afternoon Chauvin talked with plaintiff over the telephone, at which time he said to her: "Now, if you want to save yourself time, trouble and expense, you must stop bucking McC. White—otherwise he refuses to honor the stock. If you do as I say you will come over now and make a trade of Robert E. Lee stock share for share for Minnie Jane and McC. White will issue you new certificates

in the Butte West Side Company—otherwise he will not honor them.''

The officers of the company did not require an affidavit that Manfred Reinhart was living when he made the indorsement, nor did they ever demand a bond as a condition to their transferring the stock.

The plaintiff never attended a stockholders' meeting. She received two notices of special meetings of the directors, one to be held upon the 28th of September, 1925, and one on the 30th. The meeting of September 28 was not held. She attended the meeting of the 30th but what part, if any, she took in the proceedings the record does not disclose. At that meeting a resolution was passed by the board of directors calling a special meeting of the stockholders of the Robert E. Lee Mining Company for the 4th of November, 1925, at 2 o'clock P. M. at the office of the Butte West Side Mines Company, which for the first time, so far as the record discloses, was designated as the office of the Robert E. Lee Mining Company. The stockholders' meeting was called for the following purposes: (1) Considering the adoption of a by-law empowering the board of directors of the corporation to sell, lease, mortgage, exchange or otherwise dispose of the property of the corporation; (2) considering the question of adopting new by-laws, or amending existing by-laws; (3) to elect new directors; ''since all directors have served more than one year, and no election of new directors has been held for more than a year past''; (4) ''to consider the advisability of the levying of an assessment upon the stock of the corporation, for the purpose of paying the running expenses of the corporation and conducting its business and defraying the cost of development, operation and working of its property and for considering any and all business of the corporation that might come before the stockholders.'' The plaintiff did not attend the stockholders' meeting of November 4.

In January, 1925, a voluntary assessment had been levied for the purpose of paying for an abstract of the property. Plaintiff and her mother paid their portion, amounting to $8.10 each.

On October 31, 1925, the plaintiff began this action against the Robert E. Lee Mining Company and Joseph Chauvin. In the complaint she alleges her ownership of the shares; that the mining property had not been operated and the stock then had no present earning capacity or market price, but that at all times the stock "derived substantial value, to-wit: one dollar per share, from the corporation's unencumbered ownership of the Robert E. Lee Mining claim"; that plaintiff had presented her certificates of stock to the defendant company, requesting the transference of the same from the name of Manfred Reinhart, executor, to herself and that the defendant had refused to recognize plaintiff's right to the stock or to transfer the same or any part thereof to the plaintiff. Paragraph VI pleads "that by reason of defendants' said refusal plaintiff's said stock has become valueless, and plaintiff has been and now is deprived of participating in the stockholders' meetings of the defendant corporation, or in the profits or property of said corporation, to her damage in the sum of $20,190."

Its demurrer having been overruled the defendant answered, admitting that plaintiff had presented a certificate of stock in the corporation to the defendant, which certificate on the face thereof stood in the name of Manfred Reinhart, executor, and alleged that the stock which the certificate represented stood on the records of the corporation in the name of Manfred Reinhart, executor; that the certificate "had attached thereto a purported assignment in writing from Manfred Reinhart, executor, to Reinhart," and that on the back of the certificate, at the end of the blank power of attorney was written the name of Reinhart; "that thereupon said plaintiff requested said secretary to transfer the stock represented by said certificate on the records of said

corporation, from the name of Manfred Reinhart, executor, to the name of said plaintiff, and issue a new certificate in lieu of said certificate presented''; that the secretary informed the plaintiff that Reinhart, the person to whom the certificate purported to be assigned by Manfred Reinhart, executor, and whose name purported to be indorsed thereon, was a resident of the state of California, as was also Manfred Reinhart, executor, and that the secretary and officers of the corporation would require the plaintiff to furnish an affidavit or other proof that said Reinhart was alive at the date of the transfer of the stock, or in lieu thereof that plaintiff furnish an indemnity bond, with two sureties, satisfactory to the officers of the corporation, or if not satisfactory, then to be approved by a judge of the district court, conditioned to protect the corporation against any liability to the legal representative of the owner of the shares of stock represented by the certificate, in case of his or her default before the transfer, and that the plaintiff had failed to furnish the affidavit or bond.

The affirmative allegations of the answer were denied by reply. The action was dismissed as to the defendant Chauvin, who died prior to the trial. The case went to trial before a jury which found for the plaintiff in the sum of $5,000. The defendant moved for a new trial which was denied, whereupon defendant appealed.

1. Counsel for defendant criticise paragraph VI of the [1] complaint, as being in the alternative. They say plaintiff is not only attempting to claim damages for the value of her stock, but also on account of being deprived of participation in stockholders' meetings and in the profits of the corporation. This criticism is technical rather than substantial. When the paragraph is considered as a whole and taken in conjunction with the other paragraphs of the complaint its meaning and intent are not doubtful. At the beginning of the trial defendant's counsel moved the court for an order directing the plaintiff to elect whether she

would proceed upon the theory of conversion, for the value of the stock, or "for special damages for failure to transfer the stock." Plaintiff's counsel replied that he did not think the complaint susceptible to the criticism; "the action is for the value of the stock—for the conversion of the stock, and not for special damages." The trial proceeded upon that theory.

2. In *Dooley* v. *Gladiator Gold Mines & Milling Co.*, 134 [2] Iowa, 468, 13 Ann. Cas. 297, 109 N. W. 864, it is said: "The great weight of authority is to the effect that an assignee of stock may, if he so elects, treat the wrongful refusal of a corporation to register the transfer of stock as a conversion thereof, and may sue for the recovery of its value." In addition to the authorities cited in the opinion, sustaining the text, many others are given in the note to the case in 13 Ann. Cas., at page 299. (And see 23 R. C. L. 1105; 14 C. J. 764; Fletcher on Corporations, sec. 3819.)

"When under its own by-laws, or under a statute, it is necessary that the transfer of the stock be made on its books, and the corporation wrongfully refuses to make the transfer, such refusal is a conversion of the stock." (*Herrick* v. *Humphrey Hardware Co.*, 78 Neb. 809, 119 Am. St. Rep. 917, 11 Ann. Cas. 201, 103 N. W. 685.)

"The delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee for value, together with a written power of attorney to sell, assign, and transfer the same, signed by the owner of the certificate, shall be sufficient delivery to transfer the title as against the creditors of the transferor and subsequent purchasers, but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been transferred." (Sec. 5954, Rev. Codes 1921.)

"When the shares of stock in a corporation are owned by persons residing out of the state, the president, secretary, or directors of the corporation, before entering any transfer of the shares on its books, or issuing a certificate therefor to the transferee, may require from the attorney or agent of the nonresident owner, or from the person claiming under the transfer, an affidavit or other evidence that the nonresident owner was alive at the date of the transfer, and if such affidavit or other satisfactory evidence be not furnished, may require from the attorney, agent, or claimant a bond of indemnity, with two sureties, satisfactory to the officers of the corporation; or, if not so satisfactory, then one approved by the judge of the district court of the county in which the principal office of the corporation is situated, conditioned to protect the corporation against any liability to the legal representatives of the owner of the shares, in case of his or her death before the transfer, and if such affidavit or other evidence or bond be not furnished when required, as herein provided, neither the corporation nor any officer thereof shall be liable for refusing to enter the transfer on the books of the corporation." (Sec. 5956, Rev. Codes 1921.)

While in the affirmative matter of its answer the defendant relies upon the provisions of the statute last quoted, upon this feature there was a failure of proof. The fact is, defendant's officers neither required the affidavit nor the indemnity bond for which the statute provided.

But defendant's counsel now insists that plaintiff was not entitled to prevail, for the reason that after she had de-[3, 4] manded a transfer of her stock, which was refused, she participated in a directors' meeting. He thus seeks to invoke the principle of estoppel, but defendant did not plead estoppel, and it had the opportunity to do so. The plaintiff did attend the directors' meeting of September 30. So far as the record discloses that was the only directors' meeting she ever attended where business was transacted.

She was not a *de jure* director for she was not a stockholder of record. ''The corporate powers, business, and property of all corporations formed under this title must be exercised, conducted and controlled by a board of not less than three nor more than thirteen directors, to be elected from among the holders of stock, or where there is no capital stock, then from the members of such corporation.'' (Sec. 5933, Rev. Codes 1921.) To render one eligible to the office of director under this statute he must appear to be a stockholder on the books of the corporation. (7 R. C. L. 425; *In re Argus Printing Co.,* 1 N. D. 434, 26 Am. St. Rep. 639, 12 L. R. A. 781, 48 N. W. 347.) The plaintiff was not even entitled to vote the stock she owned at an election of directors; to do that one must ''be a bona fide stockholder, having stock in his own name on the stock books of the corporation at least ten days prior to the election.'' (Sec. 5946, Rev. Codes 1921.) As to whether she participated in the transaction of business at the meeting the record is silent, but if she did it was as a director *de facto.* It may be admitted that in so doing she occupied an inconsistent position. In view of the situation presented the mere fact that she did so does not bar her right to maintain this action. This was a proper subject for the consideration of the jury and the court gave an appropriate instruction respecting it.

The court told the jury that if it found from a prepon-
[5] derance of the evidence that plaintiff's demand for a transfer of the certificates of stock was wrongfully refused by the defendant, then it would become its duty to find a verdict for the plaintiff for the value of the stock in controversy, continuing: ''Prima facie the value of stock is its par value, but proof is competent to show that its value was either more or less than par. The plaintiff, by her complaint, alleges that the stock at the date of the alleged conversion, if any occurred, was worth one dollar a share,

which amount the certificates in evidence show to have been the par value of the stock. If the stock had a definite market price, the jury could consider evidence of such price in determining the value of the stock claimed by plaintiff, or if the stock was not subject to market quotations, then the evidence of the value of assets held by the company over and above its liabilities and the proportional amount of such assets which the plaintiff holding the stock bears to the entire capital stock of said corporation, may be taken into consideration by you in determining the value of the shares so held by her. The burden of proving value herein is at all times upon the plaintiff.''

The rule stated by the court has the sanction of the authorities. (*Tevis* v. *Ryan,* 13 Ariz. 120, 108 Pac. 461; 14 C. J. 771–2; Fletcher on Corporations, sec. 5431.)

Special umbrage is taken because of the use of the words [6] "prima facie." While these are Latin words they have been adopted into the English language and are in ordinary use. (See Webster's New International, New Standard and Century Dictionaries.) The jury presumably was composed of intelligent men who understood English in ordinary use.

The court also gave an instruction based upon section [7] 5956, *supra.* The jury was told in effect that the statute is permissive; that the officers of the company might invoke its provisions or waive them; that if the officers chose to demand an affidavit as a condition precedent to transferring the stock, they could not refuse to accept the plaintiff's affidavit; that if plaintiff refused to furnish her own or other satisfactory affidavit, or evidence, then the officers could require an indemnity bond as provided in the statute. The court continued: ''And if you find from a preponderance of the evidence in this action that the defendant corporation, by its president, secretary or directors, did refuse to accept the plaintiff's affidavit, after invoking the statute, if you find that it was invoked, then the fact

that other affidavit or affidavits or satisfactory evidence was not furnished, is not to be considered by you and is not a defense to this action. Further, if you find from a preponderance of the evidence before you that the defendant did invoke the statute referred to, it was not within the province of the president, secretary or directors to impose other or additional requirements, or to arbitrarily or unreasonably refuse such claimed transfer, if offer was made by plaintiff to comply with the statute. In this action it is for you and not for the corporation or its officers to decide what was or was not a compliance or offer of compliance with the statute.''

The instruction is substantially correct. We cannot see how it could operate to defendant's prejudice. The last sentence is criticised especially. This we think could not have been misinterpreted by the jury. It is true that it would have been better if the concluding sentence of the instruction had been omitted, but we fail to see prejudicial error in it.

There was no error in refusing instructions.

As the defendant has failed to point out error to its prejudice in the trial of the case the judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES MYERS, STARK, MATTHEWS and GALEN concur.